FIRST NATIONAL BANK OF UNIVERSITY PLACE, APPELLEE,
v. E. M. WHEATLEY, APPELLANT.

FILED JANUARY 16, 1913.    No. 16,918.

1. **Banks:** LIABILITY TO DEPOSITOR. A bank is not liable to a depositor for damages resulting from the failure to pay a check in currency upon his demand, where he subsequently accepted a New York draft in lieu of the currency demanded, and never made a subsequent demand upon his banker for currency or offered to return or surrender the draft, but immediately transferred it and used the proceeds for his own benefit, the draft being promptly paid by the bank upon which it was drawn.

2. **Guaranty:** LIABILITY OF GUARANTOR. A guarantor is not liable on his contract, where the person for whose benefit it is made violates his own obligations as a party thereto and deprives the guarantor of the means of preventing the loss protected by the guaranty.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*George W. Berge,* for appellant.

*Hainer & Smith* and *Julius Weil,* contra.

ROSE, J.

This is an action on a promissory note for $100, dated October 5, 1907, payable 30 days after date to the First National Bank of University Place, and signed by E. M. Wheatley. The payee is plaintiff and the maker is defendant. The answer contained an admission that defendant signed the note, a general denial, and also a cross-petition, pleading, in substance, that he contracted in writing October 5, 1907, with Mary J. Treadway to purchase her house and lot in Lincoln for $1,500, agreeing to pay her $100 in cash and $1,400 within 30 days; that he borrowed from plaintiff the same day $100 to make the cash payment, gave the note in suit, stated the purpose for which he procured the loan, and said that, without yet having received any purchase money, he had sold his

own residence with the intention of buying Mrs. Tread-
way's; that he deposited in plaintiff's bank October 28,
1907, $1,803.30, procured from plaintiff a certified check
for $1,375, and tendered it with $25 in payment of the
balance of the purchase price and requested a deed; that
the check was refused with a demand for cash; that de-
fendant informed the bank of the refusal, requested cash
for the check, and stated that, in case he did not receive
it, he would lose the $100 already paid; that plaintiff re-
fused to give him the cash, but suggested payment of the
balance of the purchase price by means of a New York
draft for $1,375, and guaranteed that defendant would
not lose the cash payment of $100, in the event of Mrs.
Treadway's refusal to accept the draft, and that, in con-
formity with the arrangement described, the draft was is-
sued by plaintiff and tendered by defendant with $25 in
cash, which were also refused; that, by reason of the
facts pleaded, defendant was unable to complete his pur-
chase or to procure a conveyance, and lost his cash pay-
ment of $100. Defendant also pleaded that, having sold
and lost possession of his own residence, and having failed
to procure the property which he agreed to buy, he sus-
tained additional damages as follows: House rent, $60;
repairs on leased house, $19; expenses of moving, $8.85;
loss of time, $15; interest on loan, $9. The reply was a
denial of all facts not admitted in the petition. The trial
court directed, and the jury rendered, a verdict in favor
of plaintiff for $125, and from a judgment thereon de-
fendant has appealed.

Was the peremptory instruction erroneous? That is the
question presented. The testimony of plaintiff tended to
prove the facts pleaded in his petition, and he was gener-
ally corroborated by other witnesses or by documentary
evidence, but that plaintiff assumed liability for any dam-
age or loss resulting from the failure of Mrs. Treadway
to accept the draft in payment of the balance of the pur-
chase price of her lot was emphatically denied by officers
of the bank. The following facts are established without

dispute: Defendant borrowed $100 from plaintiff October 5, 1907. As part of the transaction he executed and delivered the note in controversy. The entire debt is unpaid. Plaintiff's failure to pay defendant's check in currency grew out of the financial panic of 1907. Plaintiff and other banks in the community temporarily suspended payments in currency, except in small amounts, as soon as they opened their doors for business in the morning of October 28, 1907. Later in the day defendant deposited in plaintiff's bank checks and drafts amounting to $1,803.30. He did not deposit any currency. Before he left the bank he knew that small sums only were then being paid on checks, because he attempted to check out $25, and was put off with $5, which he accepted. Without demanding currency, he drew his check the same day for $1,375 and had it certified by the cashier. The next day he tendered the check and $25 to Mrs. Treadway. She refused to accept anything but money. He appeared at the bank October 30, 1907, stated that his check had been rejected, and demanded the amount thereof in cash. Plaintiff refused to give it to him, for the reason that payment of currency in large amounts had been temporarily suspended on account of the panic. After some discussion defendant, at the suggestion of an officer of the bank, accepted a draft on New York for the amount of the check, and with it and $25 made a second tender, which was also rejected by Mrs. Treadway with a demand for cash. Without returning to the bank or notifying it that the draft had not been accepted, defendant went immediately to Lincoln, promptly transferred and indorsed the draft to the First National Bank, procured a bank credit therein for $850 and received a cashier's check for the balance. After the panic and the resumption of payments in currency, he realized the full amount of his New York draft. which was marked paid through a New York clearing house November 2, 1907. Before November 5, 1907, he had not only withdrawn his deposit from plaintiff's bank, but he had overdrawn his account $5.90. After

the draft had been rejected by Mrs. Treadway, he never presented it to plaintiff, or offered to surrender it, or demanded currency in any sum. For two or three days he failed to notify plaintiff that Mrs. Treadway had refused to accept the draft. As late as November 15, 1907, ten days after the time to make the final payment had expired, under the terms of the contract of purchase, Mrs. Treadway told defendant that she would wait on him a week or ten days "to see if conditions would not loosen up," and that if he could get the money within a reasonable time "she would close the deal." No attempt is here made to state all the facts. The purpose has been to give enough of the uncontradicted evidence to test the peremptory instruction.

Defendant insists that, when the bank refused to pay his deposits in cash, and when it issued the New York draft, it guaranteed he would not lose his cash payment of $100 by any refusal on part of Mrs. Treadway to accept its paper in payment of the purchase price of her property; that she did in fact refuse to accept anything but currency, and, by reason thereof, he was unable to complete his purchase and lost the amount already paid; that there is direct proof of all these facts; that the resulting damages pleaded in his answer were proper subjects of set-off or counterclaim in his cross-petition. His deduction is that there was error in the peremptory instruction. The position thus taken is untenable for the following reasons: He deposited with plaintiff checks and drafts during a panic when such paper was not being paid in currency, and, without demanding a return thereof, accepted $5 in cash after having demanded $25, and left the bank knowing that small sums only were being paid in cash. The bank never refused to return the amount of his deposit in the same medium of exchange in which it was received. After he demanded currency for his own certified check, it was torn up by an officer of the bank in his presence, without protest, and he accepted a New York draft for the same amount upon the suggestion of the

bank that he tender it to Mrs. Treadway instead of currency. He never afterward made a demand on plaintiff for currency. He never returned the draft, but transferred it for his own benefit the day it was issued, and made it the means of reducing his bank account with plaintiff $1,375. He waited two or three days before notifying plaintiff that its draft had not been accepted by Mrs. Treadway. He obtained credit in other banks for the full amount of the draft before the time for completing his purchase had expired, and eventually received the proceeds in currency or its equivalent. By withdrawing from plaintiff's bank his only funds for paying his debt, he took away its means for either paying his deposit in cash or for making a legal tender to Mrs. Treadway. On every principle of fair dealing applicable to banking transactions, his acceptance and transference of the draft, under the circumstances narrated, was a waiver of his former demand for currency. The jury, therefore, should not have been permitted to hold plaintiff liable for its failure to comply with defendant's demand for currency.

Should the jury have been permitted to find plaintiff liable to defendant on a guaranty that he would not lose his payment of $100, if Mrs. Treadway refused to accept the draft for the balance of the purchase price? If defendant intended to hold plaintiff liable on a contract of guaranty, he should have proved that his own obligations and duties in that behalf were fully performed. If plaintiff agreed to protect defendant against a forfeiture, he should not have deprived the bank of its only means of protecting itself from the same loss, nor should he have neglected the performance of any expressed or implied duty on his part. Time was not of the essence of his purchase. This is shown on the face of his contract and by his own testimony. He said Mrs. Treadway told him as late as November 15, 1907, ten days after the time fixed by the contract for closing the transaction, that she would wait on him a week or ten days "to see if conditions would not loosen up," and that if he could get the

money within a reasonable time she "would close the deal." Suspension of payments in currency lasted about 60 days. The conditions were such as to excuse strict performance, in absence of a contract to the contrary. After the financial flurry passed, defendant received the proceeds of plaintiff's draft in currency, or in checks convertible into cash, and put his money in a safety deposit vault. He never made a legal tender of the balance due on the purchase price, though he testified he once went to the home of Mrs. Treadway in her absence with the purpose of doing so. Before the time for making the last payment expired, he had transferred the draft, had accepted the proceeds thereof, and had overdrawn his account with plaintiff to the extent of $5.90. After taking and transferring the draft, which had been issued in good faith in the hope that it would be accepted by Mrs. Treadway, he thus deprived plaintiff of the means of either paying his demands in cash or of tendering currency to protect its guaranty, and did not himself make a legal tender, though he could have done so within a reasonable time with the proceeds of the draft issued by plaintiff. On elementary principles of guaranty, defendant cannot hold plaintiff liable for his loss under such circumstances, and the question should not have been submitted to the jury, since there is no evidence to sustain a verdict in his favor on that issue.

In what has been said there is no intention to intimate that a financial panic is an excuse for nonpayment of a bank depositor's check, or that an enforceable contract of guaranty was made, or that defendant's plea for damages was a proper set-off or counterclaim. No opinion is expressed on any of those questions. They are not necessary to a decision, because there is no proof to show liability on the part of plaintiff for failure to pay defendant's demands in currency or for breach of guaranty.

There was no error below in directing a verdict for plaintiff, and the judgment is

AFFIRMED.

FAWCETT, J., concurs in the conclusion.

HAMER, J., dissenting.

I dissent upon the ground that, when the bank received the deposit, it was with the express understanding that it would furnish the money to pay for the house purchased by the defendant. It did not do so, and in consequence the defendant lost the $100 put up as forfeit money. That the money deposited in the bank was afterwards paid is no justification. The bank should not be excused on account of its failure to keep its contract, even if there was a financial flurry which made money scarce; and, if the depositor sustained a loss as the direct consequence of the bank's failure to furnish the money when it had agreed to do so, the loss should be made good, and a set-off against the note should be allowed. The method of this particular bank in declining to pay out more than a very small amount of the money deposited was adopted by many other banks at the time, and is not deserving of censure from a moral standpoint, because it was this method which averted a panic that would have been very destructive, probably, of all sorts of financial and manu-facturing interests, and would have swept away the sav-ings of thousands of persons in all parts of the United States, but the method, as it affected the defendant in this case, was without legal excuse and ought not to be justified by the decision of a court.