FRANK E. FURST ET AL., APPELLANTS, V. F. L. KRUGER: W. B. DORMAN, APPELLEE.

271 N. W. 156

FILED JANUARY 22, 1937. No. 29775.

*Sanden & Anderson,* for appellants.

*Jessen & Dierks* and *H. G. Wellensiek, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

ROSE, J.

This is an action on a sales agreement and guaranty to recover from the purchaser and his guarantor the balance due for flavoring extracts, soaps, remedies and other products. Merchandise was sold under the contract on credit at wholesale by plaintiffs, Frank E. Furst and Fred G. Thomas, partners as Furst & Thomas, of Freeport, Illinois, to F. L. Kruger of Unadilla, Nebraska, a defendant. W. B. Dorman, also defendant, guaranteed payment for all products sold under the sales agreement to defendant Kruger who is therein designated as "Dealer."

It was alleged in the petition that, beginning April 20, 1932, and continuing until June 9, 1933, goods of the value of $692.85 were sold to and received by Kruger and that credits amounted to $239.23, leaving an unpaid balance of $453.62, for which judgment was demanded.

The signing of the sales agreement by Kruger, the dealer, and of the guaranty by Dorman, the guarantor, was admitted, but Dorman denied liability as guarantor. Kruger made no defense for himself. At the close of all the evidence plaintiffs moved for a peremptory instruction in their favor and Dorman asked for a similar direction to the jury in his own behalf. The cause on its merits was thus submitted to the trial judge who directed, and the jury rendered, a verdict for defendant Dorman against plaintiffs

and for plaintiffs against defendant Kruger for $476.10. From judgment on the instructed verdict for Dorman plaintiffs appealed.

It is argued on appeal that the dismissal of the case as to Dorman, the guarantor, is contrary to the evidence and the law. The "Sales Agreement" and the "Guaranty" bearing the signatures of obligors are as follow:

"Sales Agreement

"This agreement made and entered into at Freeport, Illinois, by and between Frank E. Furst and Fred G. Thomas, co-partners, doing business under the name of Furst & Thomas of Freeport, Illinois, and F. L. Kruger of Unadilla, Nebr. hereinafter called the 'Dealer,' witnesseth:

"That, whereas the aforesaid Dealer wishes to engage in the business of retailing the products handled by Furst & Thomas, buying from them on credit, and agrees to pay Furst & Thomas at their office in Freeport, Illinois, their regular wholesale prices for all products bought from them, in instalments satisfactory to Furst & Thomas out of the proceeds of his business until his account is balanced, therefore,

"Furst & Thomas agree, upon acceptance of this agreement, to sell to the said Dealer their products on credit at their regular wholesale prices, f. o. b. Freeport, Ill., or at their option their nearest Branch Warehouse, unless prevented by fires, strikes, accidents or other causes beyond their control, but it is expressly understood and agreed that Furst & Thomas shall have the right to limit the amount of credit to be extended to the said Dealer and to refuse to fill his orders in whole or in part if in their judgment his payments on account are not satisfactory. If he remits cash with order he shall receive a discount of five per cent. (5%) from their current wholesale prices if his account is balanced. The Dealer, as a matter of good faith and to show what the receipts of his business are from week to week, agrees to send Furst & Thomas each week an itemized record of his business on forms provided for that purpose by them.

"To assist the Dealer in building up a profitable business, Furst & Thomas agree to give him advice and suggestions based on their experience and on the methods of other successful Dealers retailing their products in a similar way, but it is expressly understood and agreed that nothing contained in such advice and suggestions shall be binding upon the Dealer nor shall be construed as in any way altering or modifying the terms of this agreement.

"Either party shall have the right to terminate this agreement by giving written notice to the other party and upon its termination

from any cause by either party the Dealer agrees to pay within two months the balance due Furst & Thomas on account; provided that if the Dealer fails to make regular remittances or attempts to avoid settlement of his account the balance shall become immediately due and payable at the option of Furst & Thomas. If the said Dealer wishes to sell back his stock of products he may ship them to Furst & Thomas to point designated by them, transportation charges prepaid, promptly after termination of this agreement, and Furst & Thomas agree to pay him for such products (sample cases and discontinued products excepted) when received by them in good condition, in original, unopened bottles and packages, their current wholesale price but not more than the price originally charged the said Dealer for such products, less 5% to cover the cost of checking, handling and putting the products back into stock and if on final accounting any balance is due the Dealer to pay it promptly.

"It is expressly understood and agreed between the parties that this agreement as signed by them constitutes the sole and entire agreement between them and no modification of this agreement shall be binding unless in writing and signed by all parties hereto.

"This agreement is subject to acceptance by Furst & Thomas at their home office in Freeport, Illinois, and shall be construed as an Ilinois contract. When so accepted it shall immediately be in force and effect and unless sooner terminated shall expire December 31, 1934.

(Signature of F. L. Kruger, only.)

"We, the undersigned sureties, having acquainted ourselves with the terms and conditions of the above agreement, in consideration of the payment of $1.00, receipt whereof is hereby acknowledged, and in further consideration of Furst & Thomas extending credit to the above named Dealer do jointly and severally guarantee payment to Furst & Thomas for all products sold by them on credit to him whether such products are for resale, for advertising or for other purposes, hereby waiving acceptance and all notice, and we further agree that the written acknowledgment of his account by the said Dealer shall bind us and that any extension of time or change in the conditions of payment for goods sold to him on credit shall not release us from liability hereon. We further agree that after two months from the termination of the above agreement by either party and the non-payment of his account by the said Dealer, this guaranty shall become absolute as to the amount then due from him and we shall be primarily liable for the payment of same and upon demand we promise to pay the amount to Furst & Thomas at their office in Freeport, Illinois, without any proceeding being taken by them against the said Dealer."

(Signature of W. B. Dorman, only.)

One of the defenses pleaded by guarantor is in substance that plaintiffs did not compel Kruger, the dealer, to make weekly reports of his business according to contract and neglected to notify guarantor of such defaults. Notice of defaults was not required by the contract and failure to give it was no defense, in plaintiffs' view of the sales agreement and the law applicable thereto, while guarantor contends that, without his knowledge or consent, plaintiffs and the dealer so changed the sales agreement as to release the guaranty, such notice inuring to both plaintiffs and guarantor. On these divergent views of the parties, courts in different jurisdictions seem also to be divided. In the present instance guarantor signed the guaranty without acquiring for himself any pecuniary benefit beyond the recited consideration of one dollar and therefore is not liable beyond the strict terms of his contract. 28 C. J. 994. In this connection guarantor referred in argument to the following rulings:

"Where the principal contract, which is described and covered by the guaranty agreement, is, without the assent of the guarantors, materially changed or varied from such contract as it is described in such agreement, the guarantors will be released." *Hunter v. Huffman,* 108 Neb. 729, 189 N. W. 166.

"A guarantor is not liable on his contract, where the person for whose benefit it is made violates his own obligations as a party thereto and deprives the guarantor of the means of preventing the loss protected by the guaranty." *First Nat. Bank v. Wheatley,* 92 Neb. 807, 139 N. W. 673.

The contract and guaranty involved in the case at bar, with the same obligees but with different obligors, were considered by the supreme court of Arkansas under material facts similar to facts in evidence herein and it was held that the provisions for weekly reports protected guarantor as well as plaintiffs. That case was decided under the announced doctrine:

"One who delivers goods to a dealer under a contract

requiring the dealer to make weekly report of his receipts to the former was bound to require such reports and to report immediately such omissions to the sureties in order to recover from the sureties the amount due from the dealer." *Furst & Thomas v. Rowland,* 188 Ark. 804, 68 S. W. (2d) 451.

If this doctrine were adopted in the case now under consideration, it would require an affirmance of the judgment below. The Arkansas ruling, however, is not approved as a general principle of guaranty law, where the sales agreement, by its terms, does not make the provision for weekly reports and notice of defaults available to guarantor. In Nebraska the following rule was adopted:

"The neglect to notify the guarantor of the default of his principal does not operate to discharge the guarantor, unless such neglect is, on its face, unreasonable in view of all the circumstances of the case." *Lininger & Metcalf Co. v. Wheat,* 49 Neb. 567, 68 N. W. 941.

This intimates that circumstances may be such as to imply timely notice of defaults as a condition of charging guarantor with liability for the unpaid purchase price. Obligees in a guaranty may of course be guilty of conduct requiring such notice to guarantor, though not specifically required by the sales agreement to do so. In reviewing the judgment releasing guarantor herein, the sales agreement, the guaranty, the other evidence and the surrounding circumstances must be subjected to judicial scrutiny.

The preamble of the contract itself evinces the purpose of plaintiffs to start Kruger in business as a retail dealer by selling to him their products at wholesale on credit and permitting him to pay the purchase price in satisfactory instalments out of the proceeds of his retail business until his account is balanced. Other provisions manifest a purpose of plaintiffs as wholesalers, by advice and suggestions, to assist the dealer in building up a successful business, but without recourse on them, even if their advice and suggestions, when followed, result in disaster to the new enterprise, with guarantor carrying the entire load. Whatever

the purposes of plaintiffs may have been in putting this fatherly solicitude in their own form of contract, whether to procure the signatures of obligors, or to become trustees to direct the new retail business of the dealer without fiduciary responsibility to any one, or to promise the success of an honest enterprise, guarantor had a right to rely on strict and conscientious performance by plaintiffs. The true import of the evidence is that, from the start, plaintiffs did not assist the retail dealer in building up a successful business.

Products of plaintiffs were sold to Kruger on credit at intervals from April 20, 1932, until June 9, 1933. The items for goods totaled $692.85 and the credits for payments aggregated $239.23, leaving an unpaid balance of $453.62. Six days after the sales agreement went into effect plaintiffs began to write high-pressure letters to Kruger urging him not to confine his business to cash sales but to adopt "Time and Trial," which meant the extending of credit and the leaving of medicines and other products at homes of farmers on trial with a guaranty of satisfaction. This method was urged by a second letter and circular in glowing terms May 10, 1932, without any notice to or knowledge of guarantor, notwithstanding its purported effect was to make him guarantee the satisfaction of medicines and other products sold on credit by the retail dealer, even if tried and found unsatisfactory. Such goods, under the method of "Time and Trial," could not be returned to plaintiffs at wholesale prices, as provided by the sales agreement, and defeated the right of the dealer to return them. He had, however, purchased them outright and guarantor, under the strict terms of his guaranty, had agreed to pay for them. The dealer adopted the method of "Time and Trial," but the proper inference from the evidence is that he would not have done so except for the advice and importunities of plaintiffs. He went among farmers in his territory to make sales on credit and a guaranty of satisfaction when national depression was known to be a public calamity, seriously affecting the farming industry.

Some of the products left for trial on credit were condemned as unsatisfactory. The purchase price of many other products so sold was never paid. Early in the transactions the dealer was in default of weekly reports and reports subsequently made were disappointing to plaintiffs who complained that his credits on his account were too small for profits to the wholesalers. They frequently demanded weekly reports and complained when not made but failed to exercise promptly the right of cancelation of contract for nonperformance by the dealer. They allowed the failing business to continue until the sales agreement was terminated September 19, 1933. On that date plaintiffs notified guarantor by letter that they had canceled the sales agreement, saying they were not then demanding payment of him but permitting the dealer to make settlement for the balance due within two months. May 23, 1934, the dealer was allowed a credit of $12.98, only, for all the products returned at wholesale prices.

"Time and Trial" as a method of selling medicines and other products did not appear on the face of the sales agreement or the guaranty as a hazard of guarantor. Prior to the cancelation of the sales agreement guarantor never had any notice of "Time and Trial," nor of the defaults of the dealer, nor of the bad faith and nonperformance of plaintiffs. The contractual provision purporting to screen plaintiffs as advisers from the consequences of their own wrongs in that capacity is, under the circumstances, not sanctioned by either law or equity. Plaintiffs did not perform in good faith on their part their promise to assist Kruger, the dealer, in building up a successful business but on the contrary, by high-pressure methods, induced him to pursue a course which ended in utter failure. Under all the circumstances, good faith and fair dealing required plaintiffs to give guarantor immediate notice of the dealer's failure to make reports and of the adoption of "Time and Trial" as a method of making sales at retail. For unreasonable and unconscionable neglect in those particulars, as clearly shown by the evidence, guarantor was released

from liability, without regard to the reasons that prompted the district court to dismiss the action as to guarantor.

AFFIRMED.

CARTER, J., dissents.