CLEMENT G. MURPHY AND MARY MURPHY, HUSBAND AND WIFE, APPELLEES, V. STUART FERTILIZER COMPANY, INC., A DISSOLVED NEBRASKA CORPORATION, ET AL., APPELLEES, CHARLES SHANE AND HOLLY SHANE, APPELLANTS.

380 N.W.2d 631

Filed January 31, 1986.   No. 84-981.

James Widtfeldt, for appellants.

Jewell, Gatz & Collins, for appellees Murphys.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is an action at law in which Clement G. Murphy and his wife, Mary Murphy, as sellers of certain real estate, brought suit to collect certain delinquent installment payments due from, among others, Charles Shane and Holly Shane, guarantors of the contract of sale. Following a trial to the district court, a jury having been waived, the district court found in favor of the Murphys and against the Shanes and entered judgment in the amount of $61,800, that being the amount of principal and interest due as of March 30, 1984. Because the contract contained no provision permitting acceleration in the event of default, the Murphys were only permitted to sue for those payments delinquent as of the date judgment was entered. The defendant Stuart Fertilizer Company, Inc., which was the named purchaser of the property, is a dissolved corporation; the coguarantors, Orville Seger, Jr., and Makayla Seger, have filed bankruptcy. For that reason, only Charles Shane and Holly Shane have appealed the judgment.

The appellants, Shanes, assign five errors of law. The first assignment is that the contract, exhibit 1, was modified in a manner not approved by the Shanes and therefore not binding upon them. The second assignment of error is that because the Shanes were absolute guarantors, they are subrogated to the rights of the Murphys and therefore were entitled to terminate the contract and deliver all of the assets back to the Murphys in full satisfaction of the contract. The third assignment of error is that the Murphys removed the documents from escrow, thereby terminating the contract. Assignments of error Nos. 4 and 5 are to the effect that the decision of the court is contrary to the evidence and contrary to the law. We believe that each of the assignments of error is without merit and that the judgment entered by the district court for Holt County, Nebraska, should be, in all respects, affirmed.

Before we proceed to recite the facts and analyze the law, we note that, this being a law action and a jury having been waived, the findings of fact made by the district court have the effect of a jury verdict and will not be set aside unless clearly wrong. *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983); *West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 341 N.W.2d 588 (1983). An examination of the record discloses that in August of 1979 Clement and Mary Murphy were the owners of two tracts of land in Holt County, Nebraska, and some personal property located on the land. On September 12, 1979, the Murphys entered into an agreement with Stuart Fertilizer Company, Inc., a Nebraska corporation, to sell to Stuart Fertilizer the land and personal property owned by the Murphys for a total purchase price of $130,000, to be paid at the rate of $10,000 down and $10,000 per year for 12 years. The unpaid balance was to bear interest at the rate of 12 percent per annum. This contract was signed on behalf of Stuart Fertilizer by Charles Shane as president and attested to by Holly Shane as secretary. Attached to the bottom of the agreement was a document bearing the words "We hereby guarantee the payments as set-forth in this Agreement as provided herein." This guaranty was signed by Charles Shane, Holly Shane, Orville Seger, Jr., and Makayla Seger, all as guarantors, and subscribed to before Pamela A.

Roether on the day that the agreement was executed.

An examination of the document discloses that the guaranty was attached to the agreement with Scotch tape and was not a part of the original agreement. The Shanes maintain that this indicates that neither the Shanes nor the Segers ever guaranteed this particular agreement. The Shanes contend that, in fact, they had guaranteed only a contract dated August 2, 1979, for the sale of only one of the tracts of land, with a purchase price of $78,500. The facts as found by the trial court are to the contrary. The evidence discloses that the agreement of August 2, 1979, was placed in the custody of Orville Seger and the appellants' attorney and that when the other agreement was presented to Clement Murphy on September 12, 1979, for his signature, Charles Shane's signature was already affixed as president of Stuart Fertilizer and the guaranty was already attached. That is to say that when Stuart Fertilizer's attorney presented the contract to Clement Murphy for execution, the guaranty which had been in the possession of either Orville Seger or the attorney for Stuart Fertilizer was already affixed to the agreement of September 12, 1979. No one other than Seger, Shane, or their attorney could have attached the guaranty.

The Murphys received only the downpayment and the annual payment due for 1980 on time. The 1982 and 1983 payments were not made, though certain partial payments on interest were accepted late by the Murphys. On September 6, 1983, notice of default was sent to Stuart Fertilizer, as required by the contract, and when no action was taken to correct the default, suit was filed for the amount then due.

We do not believe that the trial court was in error when it found that the guaranty bearing the Shanes' signatures was properly affixed to the agreement of September 12, 1979, and that by reason thereof the Shanes were absolutely liable as guarantors. The Shanes' argument concerning their lack of knowledge and understanding regarding their obligation as guarantors is further weakened by the fact that nearly 5 years before suit was filed by the Murphys, the Shanes clearly were aware that the agreement between the Murphys and Stuart Fertilizer was for all of the property. During all of that time, no objection was ever raised. Even if the Shanes had alleged that

the guaranty was fraudulent, a fact which the evidence does not support, such a claim would be barred by the statute of limitations, since the Shanes had actual knowledge of the contract terms and the guaranty more than 4 years prior to the time suit was filed. See Neb. Rev. Stat. § 25-207 (Reissue 1979). There is simply no merit in the Shanes' contention that the guaranty was not a part of the agreement and therefore not enforceable against them.

Likewise, the Shanes' contention that by accepting payments of interest only, the Murphys, in some manner, modified the agreement and discharged the Shanes as guarantors is without merit. The rule appears to be clear that accepting payments late does not discharge the guarantor unless such late payments are due to an extension agreement entered into between the creditor and the debtor, supported by valid consideration and binding on the parties. 38 Am. Jur. 2d *Guaranty* § 95 (1968). See, e.g., *Commercial Sav. Bank v. Dunning*, 202 Iowa 478, 210 N.W. 599 (1926); *State Bank of Burleigh County v. Porter*, 167 N.W.2d 527 (N.D. 1969); cf. *First Trust Co. v. Airedale Ranch & Cattle Co.*, 136 Neb. 521, 286 N.W. 766 (1939). The record simply is devoid of any evidence that an agreement to accept payments late was entered into between the Murphys and Stuart Fertilizer. The record simply discloses that payments were made late and accepted by the Murphys.

The Shanes further contend that the guaranty was discharged by reason of the Murphys' failing to allow the property to be sold in order to pay off the contract. The evidence is insufficient to establish that a bona fide offer of purchase was ever obtained. Even if such was the case, the Shanes' guaranty would not be discharged. The guaranty was an absolute guaranty, providing: "We hereby guarantee the payments as set-forth in this Agreement as provided herein," and as such was not discharged by reason of the Murphys' refusal to permit the property to be sold. A guaranty is basically a contract by which the guarantor promises to make payment if the principal debtor defaults. See, *In re Estate of Williams*, 148 Neb. 208, 26 N.W.2d 847 (1947); *Chiles, Heider & Co. v. Pawnee Meadows*, 217 Neb. 315, 350 N.W.2d 1 (1984). The guaranty in the present case contained no conditions and as

such obligated the Shanes to make payment if Stuart Fertilizer failed to do so. The inability of Stuart Fertilizer to sell the property did not relieve the Shanes of their unconditional obligation to pay.

The Shanes' further contention that by removing the contract from possession of the escrow agent for the purpose of filing suit against them, the Murphys somehow terminated the escrow and thereby relieved the Shanes of their guaranty is without merit. Likewise, the Shanes' contention that as guarantors they are subrogated to the rights of the Murphys and therefore at their election can terminate the contract and return the property is without any legal basis and is wholly without merit. To permit such a circuitous result would be to make the guaranty to pay meaningless.

The simple fact of the matter is that the Shanes guaranteed payment in the event that Stuart Fertilizer failed to do so. Stuart Fertilizer has failed to do so, and the Shanes must pay. The judgment of the district court in that respect was correct. The judgment is affirmed.

AFFIRMED.