MID-AMERICA MAINTENANCE, INC., APPELLEE, V. BILL MORRIS FORD, INC., A NEBRASKA CORPORATION, APPELLANT, FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SUPERIOR, A FEDERAL ASSOCIATION, ET AL., APPELLEES.

442 N.W.2d 869

Filed July 21, 1989.    No. 87-885.

John B. McDermott, of McDermott, Depue & Zitterkopf, for appellant.

Carla J. Alexander, of Downing & Alexander, for appellee Mid-America.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Bill Morris Ford, Inc. (Ford) appeals a decree foreclosing a material and labor lien on its Ford dealership building in a suit brought by Mid-America Maintenance, Inc. (Mid-America). We affirm the Nuckolls County District Court decree.

On appeal, Ford claims that the evidence is insufficient to sustain the foreclosure in favor of Mid-America. Appellant essentially makes two arguments: (1) that the evidence does not support a finding that a contract existed between the parties and (2) that the evidence does not support a finding that the materials set forth in the lien were delivered to the jobsite and incorporated into the work actually done.

An action to foreclose a construction lien is one grounded in equity. *Smith v. Central Inv. Co.*, 218 Neb. 728, 358 N.W.2d 772 (1984); *O'Keefe Elevator v. Second Ave. Properties*, 216 Neb. 170, 343 N.W.2d 54 (1984). In an appeal of an equity action, the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Thomas v. Marvin E. Jewell & Co., ante* p. 261, 440 N.W.2d 437 (1989); *Frenzen v. Taylor, ante* p. 41, 439 N.W.2d 473 (1989).

In the spring of 1983, William A. Morris, president of Ford, telephoned Mid-America about repairing leaks in the roof of Ford's building located in Superior, Nebraska. Harvey Knoll, Sr., Mid-America's president, inspected the roof. After a

personal interview with Knoll, Ford engaged Mid-America to repair the roof of appellant's building.

Mid-America's evidence reflects that in conformity with its written proposal, it was engaged to and did apply 95 rolls of 50-pound roofing over the entire existing roof. That was covered with an aluminum fiber coating. The job was completed on October 26, 1983. Total cost of materials, adhesive, plastic roof cement, and tax was $6,626.10. Labor cost was $5,703, making a total of $12,329.10. Testimony of Knoll and his son, Harvey Knoll, Jr., further reflects that there was a discussion about whether the building needed a patch repair or complete covering. Although Morris refused to sign anything, he did orally authorize Mid-America to proceed with a complete roof repair as stated in the written proposal. That proposal was submitted to Morris before Mid-America was engaged to perform the work, according to the senior Knoll.

Ford paid Mid-America $5,500 in installments. It refused to pay any additional sum, claiming that it authorized a patch job only for the sum of $5,500. Mid-America timely filed a construction lien against Ford's building and real estate February 21, 1984. Thereafter, this suit to foreclose the lien was filed.

William Morris died before trial. The key witness for Ford, Morris, in a deposition taken before his death, testified that he "could have" telephoned the senior Knoll and that he recalled that Mid-America did some work for Ford. "I'm positive that I asked him to do something," Morris testified. He said he asked Mid-America to patch Ford's roof. Morris said he never saw a written proposal for the work, but recalled that Knoll had asked him "to sign something, but I don't know if it was this [the proposal] or what it was." Morris said, "I was going to spend $5,500 and that's it." In answer to further questions, Morris said he did not know if the paper submitted to him by Knoll was the proposal or whether there was a dollar amount on it.

Morris admitted he and Knoll reached an agreement, but claimed that it was limited to $5,500 for patchwork. In contrast to the detailed testimony of the senior Knoll concerning the condition of the roof, the work to be done, completion of the work, and a subsequent offer by Morris on the method of

payment, Morris' testimony was vague, incomplete, and indefinite. Morris did not recall when the work was to be completed. He could not explain the discussion he and Knoll had about the condition of the roof. Morris could not recall telling Knoll that he would pay for the entire roof repair as soon as he sold some used vehicles or offering to turn over a truck to Knoll in exchange for the remainder of the amount owed on the roof.

Morris said that he did not know what work was done and what work was not done and that he did not know whether Mid-America, after completing its work, returned to fix various leaks. In its pleadings, Ford alleged that Mid-America could not have used the quantities of materials it claimed. Morris said he did not know what specific items Ford would not have purchased, adding, "I don't know anything about a roof."

The first issue for this court's consideration is whether Mid-America and Ford entered into a contract. A construction lien is not valid absent a contract between the parties. Neb. Rev. Stat. § 52-131 (Reissue 1988). See, also, *Columbus Fed. S. & L. Ass'n v. Swails Constr. Co.*, 215 Neb. 287, 338 N.W.2d 593 (1983).

Implicit in the trial court's order is a finding that the parties entered into a contract. Obviously, Morris and Knoll, Sr., agreed that Mid-America would repair the Ford dealership's roof. We agree with the trial court that there was an express contract.

Ford's first argument, that there is insufficient evidence of a contract, is really a complaint that the trial judge accepted Mid-America's version of the facts rather than Ford's. The trial court, having viewed Mid-America's witnesses, obviously found their testimony credible. We give weight to that finding.

Because Morris testified by deposition, his credibility must be judged through the answers he gave to the questions proposed, along with all of the other facts and circumstances in evidence. This witness could not recall details concerning the negotiations with Knoll, Sr., only that he engaged Mid-America to patch Ford's roof. He claimed the work was to cost $5,500. His testimony was vague on many material points that one would expect a businessman to remember with clarity. In

several areas, his testimony corroborated the testimony of witnesses for Mid-America. His testimony fails to negate relevant evidence adduced by Mid-America.

As did the trial court, based on the credibility of the witnesses, we too find there was sufficient evidence of a contract. Ford's first argument is without merit.

Ford's second argument, that there is insufficient evidence that the items listed on the construction lien were actually used in the roof repair, is also without merit. Neb. Rev. Stat. § 52-134 provides:

A lien for furnishing materials arises only if:

(a) They are supplied with the intent, shown by the contract of sale, the delivery order, delivery to the site by the claimant or at his or her direction, *or by other evidence,* that they be used in the course of construction of, or incorporated into, the improvement in connection with which the lien arises; and

(b) They are either:

(i) Incorporated in the improvement or consumed as normal wastage in construction operations . . . .

(Emphasis supplied.)

Appellant argues that Mid-America is not entitled to a construction lien because it did not enter into evidence bills of lading, delivery tickets, or other documents to prove intent that the materials were to be used in the course of the roof repair. This argument ignores that provision of the statute that "other evidence" may be used to prove intent by delivery to the site at the direction of the claimant.

Harvey Knoll, Sr., testified that the materials listed on the lien were delivered to the site at his direction and that his employees carried the materials onto the roof. The filed lien was received in evidence. Harvey Knoll, Jr., testified that he was onsite and that all the listed items were used in the roof repair under his supervision. This evidence is sufficient to prove that Mid-America supplied, delivered, and incorporated in Ford's roof the items set forth in the construction lien.

The only evidence offered on this issue by the appellant is Morris' statement that he did not know which of the items listed on the lien were not delivered or used on the roof. This is not

sufficient to overcome Mid-America's evidence.

The trial court's judgment in favor of Mid-America is correct and is affirmed.

AFFIRMED.