PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS, SUCCESSOR IN INTEREST TO NORFOLK PRODUCTION CREDIT ASSOCIATION, APPELLEE, v. PHILIP G. SCHMER, APPELLEE, AND DORIS M. SCHMER, APPELLANT.

448 N.W.2d 123

Filed November 17, 1989.   No. 87-1002.

Marion F. Pruss for appellant.

James T. Gleason, of Stalnaker, Becker, Buresh & Gleason, P.C., for appellee Production Credit Association.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

The appellant, Doris M. Schmer, complains that in an action to foreclose her ex-husband's farm and to enforce her guaranty, the trial court erred in finding that a mortgage she gave in 1974 was valid and superior to her lien for alimony, child support,

and property settlement.

The appellant also complains that the Madison County District Court erred in holding that her 1975 guaranty for the payment of her husband's debts had continuing validity and in holding that the mortgage and guaranty were cumulative liabilities. We affirm.

A foreclosure action is grounded in equity. In an appeal of an equity action, the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Mid-America Maintenance v. Bill Morris Ford*, 232 Neb. 920, 442 N.W.2d 869 (1989).

Doris and Philip G. Schmer, then husband and wife, were indebted on a note in the sum of $83,825, payable September 5, 1975, to the Norfolk Production Credit Association (NPCA), predecessor in interest to Production Credit Association of the Midlands (PCA) (both associations oftentimes collectively referred to as PCA). The loan financed the Schmers' cattle operation. On September 3, 1974, as security for their $83,825 indebtedness, the Schmers executed and delivered to NPCA a "Collateral Agreement" and a payable-on-demand $75,000 collateral note, which was secured by a $75,000 demand mortgage on two parcels of their farmland (hereinafter called parcel 1 and parcel 2).

The agreement collaterally secured

any renewal or extension of the indebtedness evidenced by the notes last described [the $83,825 note] *or any other indebtedness now owed by the undersigned to said association or hereafter incurred by said undersigned with said association either jointly or severally* or on the faith or credit of their community or separate estates or either of said estates. It is the express agreement of the parties that the consideration for this pledge is the granting of a loan by the association evidenced by the obligations last above mentioned.

Further, *this is a continuing agreement and all rights,*

> *powers, and remedies hereunder shall apply to all past, present, and future indebtedness of the undersigned to the association* notwithstanding the death, dissolution, incapacity, or insolvency of the undersigned, and shall continue in full force until all indebtedness shall have been paid in full.

(Emphasis supplied.)

Instead of executing and delivering renewal notes, Doris Schmer, on October 13, 1975, executed a $125,000 "Continuing Guarantee." She thereby guaranteed to NPCA and its successors

> "the payment at maturity of any or all indebtedness evidenced by any notes, security agreements, mortgages, negotiable instruments, or other evidences of indebtedness of Philip G. Schmer, to [NPCA], whether now in existence or hereinafter incurred by Philip G. Schmer, for any purpose and in any amount whatsoever."

By this document, Doris Schmer bound her separate existing and future-acquired property.

On March 11, 1981, a decree was entered dissolving the Schmers' marriage. Doris Schmer was awarded alimony, child support, and a monetary property settlement.

Thereafter, on April 22, 1981, Philip Schmer executed and delivered to NPCA an operating note and open end real estate mortgage in the amount of $260,000. The pledged real estate consisted of three parcels of land (parcels 1 and 2 and a parcel 3), which included the farmland previously pledged to NPCA in the 1974 real estate mortgage. The unpaid balance of the April 22 note was renewed on May 13, 1982, in the amount of $228,000.

In December 1982, Philip Schmer filed for relief under chapter 11 of the U.S. Bankruptcy Code. That action was dismissed on July 23, 1985, on NPCA's motion. On December 9, 1985, NPCA obtained a judgment on the May 13, 1982, renewal note. NPCA executed on Philip Schmer's equipment, sold it, and applied the proceeds to the debt. In an attempt to satisfy the remainder of the debt, PCA, as successor in interest to NPCA, instituted a foreclosure proceeding on the parcels of farmland pledged in the 1974 and 1981 mortgages. PCA also

asked the court to enforce the personal guaranty of Doris Schmer.

In its foreclosure decree, the trial court concluded that Philip Schmer was indebted to appellant by reason of the 1981 divorce decree in the sum of $288,604.51, including interest, and was indebted to PCA in the sum of $390,482.65. With respect to the three parcels of property, the trial court concluded that PCA had a first lien on parcels 1 and 2 in the amount of $75,000 by reason of the original 1974 real estate mortgage; Doris Schmer had a second lien on parcels 1 and 2 in the amount of $288,604.51 by reason of the dissolution decree; and PCA had a third lien on parcels 1 and 2 in the amount of $315,482.65, the total sum owed PCA being offset by the $75,000 first lien. With respect to parcel 3, the trial court concluded that Doris Schmer had a first lien in the amount of $288,604.51, and PCA had a second lien in the amount of $315,482.65.

The trial court further concluded that the $125,000 guaranty given by appellant had not been revoked and was in full force and effect.

In her assignments of error, the appellant specifically claims that the trial court erred in holding (1) "the 1974 PCA mortgage to be a valid lien superior to the lien of Doris Schmer," (2) "the guaranty executed by Doris Schmer in 1975 to have continuing validity," and (3) "the guaranty and the mortgage were cumulative liabilities."

In an effort to refute PCA's first lien on parcels 1 and 2, appellant claims that the 1974 collateral note and mortgage were discharged by payment in accordance with the principle applied in *Diesel Service, Inc. v. Accessory Sales, Inc.*, 205 Neb. 381, 288 N.W.2d 258 (1980). *Diesel* held that where payments are made on an open account, and no appropriation has been made by either party concerning the payments, the law will apply them in discharge of the earliest items. Under that principle, and based on the payments made to NPCA, appellant asks this court to hold as a matter of law that the 1974 mortgage had been paid "either on August 9, 1975, when Philip Schmer made a $77,373.98 payment on his account or, at the latest, on July 2, 1979, when the account reflected a zero balance." Brief for appellant at 21. Appellant's reliance on

*Diesel* is misplaced. The $75,000 collateral note, as previously stated, was given solely as collateral. No payments were ever made on this collateral note. Rather, all payments resulted in decreasing the debtors' obligation as reflected in NPCA's and PCA's loan transaction records.

Appellant further contends that the 1974 real estate mortgage is void because it fails to state that it is intended to secure future advances in accordance with Neb. Rev. Stat. § 76-238.01 (Reissue 1986). Section 76-238.01 provides that optional future advances made after written notice of a lien or claim against the real estate shall be junior to the lien or claim even when a mortgage validly securing future advances is of record. However, since the 1974 mortgage secured only a collateral note and not future advances, this contention fails.

Because the 1974 mortgage pledging parcels 1 and 2 is valid and the execution and delivery of the collateral note, collateral agreement, and 1974 mortgage predate appellant's rights arising under her divorce decree, the trial court correctly concluded that PCA's $75,000 lien had first priority on parcels 1 and 2.

Doris Schmer's second assignment of error contests the trial court's holding that the $125,000 guaranty she executed in 1975 continued to be valid and enforceable. Appellant claims that by the time of the foreclosure, PCA had lost its rights under the guaranty for each of the following reasons: (1) Doris Schmer signed only in her capacity as a married woman, and once her marriage was dissolved, the underlying consideration for the guaranty no longer existed; (2) PCA failed to notify her of subsequent transactions between itself and Philip Schmer; (3) the statute of limitations barred enforcement; (4) the guaranty became void as a result of abandonment or, in the alternative, laches; and (5) PCA was negligent in failing to attain possession of the collateral.

Appellant first argues that once her marriage was dissolved on March 11, 1981, any advances made by PCA to Philip Schmer were not entitled to protection of the guaranty. Appellant cites no case law to support this proposition. Rather, she asserts that the law of strict construction of contracts supports this proposition.

The paragraph of the guaranty appellant relies on states: "I, Doris M. Schmer, *a married woman,* do execute this Guarantee with reference to my individual estate on the faith and credit thereof and with the intent to charge my separate property for its payment, binding that property which I now own and that which I may hereafter acquire." (Emphasis supplied.) The language "a married woman" in this provision is nothing more than a term of description. PCA was not a party to the Schmers' dissolution action. Its rights under the guaranty could not be affected by any actions in the dissolution proceedings.

Secondly, appellant contends that PCA's failure to give her notice of its subsequent transactions with Philip Schmer discharged her liability as guarantor. The "Continuing Guarantee" states that appellant guarantees "the payment at maturity of any or all indebtedness evidenced by any notes . . . of Philip G. Schmer . . . whether now in existence or hereinafter incurred" and that the guaranty "shall extend to any renewals or extensions of the . . . obligations."

Nebraska adheres to the rule of strict construction of guaranty contracts. *Federal Deposit Ins. Corp. v. Heyne,* 227 Neb. 291, 417 N.W.2d 162 (1987). " 'When the meaning of the contract is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.' " *Id.* at 293, 417 N.W.2d at 163 (quoting *Hunter v. Huffman,* 108 Neb. 729, 189 N.W. 166 (1922)). The language of Doris Schmer's guaranty is clear and unambiguous. There is no provision in the guaranty requiring PCA or its predecessor to give notice to appellant of its transactions with Philip Schmer. Such a notice requirement cannot be read into the contract.

Furthermore, Doris Schmer's guaranty is absolute. An absolute guaranty is a contract by which the guarantor has promised that if the debtor does not perform his obligation or obligations, the guarantor will perform some act for the benefit of the creditor. *Home Savings Bank v. Shallenberger,* 95 Neb. 593, 146 N.W. 993 (1914). An absolute guaranty of payment is enforceable at any time without demand and notice of default. *First West Side Bank v. Herzog,* 204 Neb. 356, 282 N.W.2d 38 (1979). While this court has stated that bad-faith failure to give

notice of default may operate to discharge a guarantor in a case where such neglect is unreasonable and unconscionable, *Furst v. Kruger*, 132 Neb. 54, 271 N.W. 156 (1937), there is no evidence in this case that PCA acted in bad faith or unreasonably.

Thirdly, PCA's effort to enforce the guaranty is not barred by the statute of limitations. The statute of limitations begins to run against a contract of guaranty the moment a cause of action first accrues. *Lake v. Piper, Jaffray & Hopwood Inc.*, 219 Neb. 731, 365 N.W.2d 838 (1985); *Cummins v. Tibbetts*, 58 Neb. 318, 78 N.W. 617 (1899). A guarantor's liability arises when the principal debtor defaults. *Murphy v. Stuart Fertilizer Co.*, 221 Neb. 767, 380 N.W.2d 631 (1986). In this case, Philip Schmer defaulted in 1982. This action was brought April 16, 1986, against Doris Schmer on her guaranty, well within the 5-year statute of limitations in Neb. Rev. Stat. § 25-205 (Reissue 1985).

Fourthly, there is no evidence that PCA abandoned Doris Schmer's guaranty. Abandonment of a contract occurs where one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior. *Reifschneider v. Nebraska Methodist Hospital*, 212 Neb. 91, 321 N.W.2d 445 (1982). Appellant fails to demonstrate how PCA abandoned the guaranty. She points to the deletion of her name from PCA's transaction records in March of 1981 as evidence of the abandonment. Such an act by PCA may very well reflect PCA's view as to appellant's responsibility on the principal obligation. However, it would hardly affect her liability on a separate obligation evidenced by a separate document, the guaranty.

Appellant also points to the testimony of former loan officer and past president of NPCA Eldon Peters as evidence of abandonment. Peters testified that he could not say whether PCA relied on the guaranty without looking to see if the guaranty was carried forward as collateral after the divorce. This testimony does not prove that PCA abandoned the guaranty. Without more, it cannot be concluded that PCA abandoned the guaranty.

PCA is not barred from enforcing the guaranty because of

laches. The defense of laches is not favored in Nebraska. "[I]t will be sustained only if the litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary." *Beaver Lake Assn. v. Sorensen*, 231 Neb. 75, 78, 434 N.W.2d 703, 706 (1989). The evidence clearly shows that PCA sought to collect the indebtedness, on which appellant was collaterally liable, from Philip Schmer as early as 1981. Further attempts at collection from Philip Schmer were stayed by his filing of bankruptcy. Following dismissal of the bankruptcy proceedings, PCA once again sought to collect the debt from Philip Schmer. PCA eventually obtained a judgment on the 1982 renewal note and exhausted Philip Schmer's personal property in partial satisfaction of the debt. It cannot be said that PCA acted negligently in enforcing its rights to the detriment of appellant.

Appellant contends that PCA's negligence is evidenced by the fact that from the time of Philip Schmer's default in 1982 until the time PCA obtained judgment in 1985, the collateral supporting Philip Schmer's obligation to PCA continued to decrease in value. Appellant relies upon *Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 195 Neb 292, 237 N.W.2d 645 (1976), which cited the Restatement of Security § 132 (1941):

> "Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) *fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action*."

(Emphasis supplied.) *Custom Leasing* at 298, 237 N.W.2d at 649.

As previously stated, neither NPCA nor its successor, PCA, acted unreasonably in enforcing its rights. It is not within the province of the court to attach blame for the mere precipitous decline in the value of real estate.

Appellant's third assignment of error, claiming the trial court erred in holding that the guaranty and the mortgage were cumulative liabilities, is equally without merit. These liabilities

are evidenced by two separate instruments, executed at separate points in time. They were drafted without any reference to each other. They are independent liabilities.

Accordingly, based upon the narrow issues that this court was called upon to address, we affirm.

AFFIRMED.