745 N.W.2d 291 (2008)
275 Neb. 136
Mary Lyn LYNCH and Thomas Lynch, individually and as representatives of all others Similarly situated, appellants,
v.
STATE FARM MUTUAL AUTOMBILE INSURANCE COMPANY, appellee.
No. S-06-737.
Supreme Court of Nebraska.
February 22, 2008.
*293 Christopher D. Jerram, of Kelley & Lehan, PC, Omaha, for appellants.
Mark C. Laughlin, Joseph K. Meusey, and Patrick S. Cooper, of Fraser Stryker, P.C., L.L.O., Omaha, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
STEPHAN, J.
This case is before us for the second time. Initiated as a class action, the named plaintiffs alleged that with respect to "medical payments coverage" included in their automobile insurance policies, State Farm Mutual Automobile Insurance Company (State Farm) charged a premium for indemnity coverage but instead provided managed care coverage of lesser value. In McGinn v. State Farm Mut. *294 Auto. Ins. Co.,[1] we held that a named plaintiff who had not asserted a claim against State Farm under his medical payments coverage could not state a cause of action for breach of contract or any of his other theories of recovery. We affirmed an order dismissing his claims and ordering him stricken as a party plaintiff. This appeal involves the original plaintiffs, Mary Lyn Lynch and Thomas Lynch, who appeal from a subsequent order granting State Farm's motion for summary judgment and dismissing the action. We affirm.

I. BACKGROUND
Mary was involved in an automobile accident on August 18, 1995, in which the vehicle she was driving was struck from behind by a vehicle driven by Rita Norman. Mary sought medical treatment for the injuries sustained in the accident, for which she incurred expenses.
At the time of the accident, Mary and her husband, Thomas, were insured under an automobile insurance policy issued by State Farm. The portion of the policy designated "MEDICAL EXPENSES," which included an "Amendatory Endorsement" provided in pertinent part:
We will pay reasonable medical expenses incurred; for bodily injury caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.
....
We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the bodily injury sustained.
....
1. If the injured person has been paid damages for the bodily injury by or on behalf of the liable party in an amount:
....
b. equal to or greater than the total reasonable and necessary medical expenses incurred by the injured person, we owe nothing under this coverage.
Mary submitted bills to State Farm for medical expenses in the amount of $1,906, which she claimed to have incurred as a result of the accident. State Farm paid $1,351 of this amount and denied the remainder.
Mary asserted a claim for her injuries against Norman. The claim was settled on August 24, 1999, for $6,838.67. As a part of this settlement, Mary and Thomas specifically reserved any and all claims they had against State Farm. Of the total settlement amount, $500 was deposited in escrow "to fully protect any and all alleged subrogation claims by State Farm" presently owed or hereafter ordered in any subsequent judicial proceeding to be paid by State Farm to Mary Lynch."
The Lynches commenced a class action suit against State Farm in the district court for Douglas County. They alleged that State Farm was engaged in a scheme whereby it marketed medical payments medical coverage "as a promise of protection through indemnity, not as a managed care plan," but in fact provided managed care coverage for which a lesser premium should have been charged. They sought to represent a class defined to include
every individual within the State of Nebraska who purchased a contract of automobile insurance from [State Farm] *295 on or since January 1, 1990, which included medical payments coverage, and who, at the time of purchase or renewal of said contract were not informed by [State Farm], either in the contract itself or by other means, of [State Farm's] scheme.
The Lynches alleged six separate theories of recovery, designated as "causes of action," including: breach of contract; breach of covenant of good faith and fair dealing; violation of the Uniform Deceptive Trade Practices Act, Neb.Rev.Stat. § 87-301 et seq. (Reissue 1999); fraud; unjust enrichment; and violation of Nebraska's Consumer Protection Act, Neb. Rev.Stat. § 59-1601 et seq. (Reissue 1998). They prayed for various forms of relief, including damages measured by the difference between the premiums actually paid for medical payments coverage and the lesser premium which they contend was applicable to the managed care coverage they received.
State Farm filed a motion for summary judgment, seeking dismissal of the entire case or, in the alternative, partial summary judgment and dismissal of the class action allegations. The Lynches filed a motion to approve a class notice and a motion seeking partial summary judgment with respect to certain factual and legal issues.
In an order granting State Farm's motion for summary judgment and dismissing the action, the district court determined that the. Lynches' own claim against State Farm must fail because they could not establish a breach of contract. Specifically, the court determined that because the Lynches received more than the amount of their medical payment claim in the settlement with Norman, State Farm had no liability to them under its medical payments coverage, and thus, the Lynches "cannot be heard to complain about an alleged scheme if they have not been damaged by it. Further they cannot be the standard bearers for all of those in a class who have submitted claims and been denied by [State Farm]." The court determined that the Lynches, "having been paid in full no longer share a common interest with those in the purported class whose claims have been denied" and, further, that individual issues with respect to each member of the purported class would be dissimilar and predominate over issues common to the class. Finally, the court noted that the Lynches' expert witnesses were "generally unfamiliar with [State Farm] and its policyholders in the state of Nebraska and offer opinions derived from other cases in other states which have little bearing on the issues in this case" and that their opinions were therefore without sufficient foundation and were conclusory in nature. Accordingly, the court granted State Farm's motion for summary judgment and dismissed the action.
The Lynches perfected a timely appeal, and we granted their petition to bypass, in which State Farm concurred.

II. ASSIGNMENTS OF ERROR
The Lynches assign, restated and consolidated, that the trial court erred in (1) granting State Farm's motion for summary judgment, (2) failing to grant their motion for mummary judgment, (3) determining that their expert witnesses' opinions were conclusory and lacked foundation, and (4) concluding that the case could not proceed as a class action.

III. STANDARD OF REVIEW
[1, 2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is *296 entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

IV. ANALYSIS

1. MARY LYNCH

(a) Breach of Contract Claim
[3, 4] An insurance policy is a contract.[4] In assessing claims for damages in insurance contract actions, it is ordinarily necessary to assert a breach.[5] In McGinn, we held that a State Farm insured who had not filed a claim under the policy could not state a cause of action for breach of contract. Here, Mary filed a claim under the medical payments coverage, which State Farm denied in part. The first issue presented is whether the district court erred in determining as a matter of law that the denial did not constitute a breach of the insurance contract. Under our standard of review, we afford Mary the benefit of all favorable factual inferences in resolving this issue.
[5, 6] We begin with the language of the policy. An appellate court reviewing an insurance policy must construe the policy as any other contract and give effect to the parties' intentions at the time the contract was made.[6] Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute.[7] Here, the policy unambiguously provided that if an insured receives a payment from a third-party tort-feasor which is equal to or greater than medical expenses incurred by the insured, State Farm would "owe nothing" under its medical payments coverage. Other courts have held that language identical to that in the policy before us constitutes a legitimate policy exclusion intended to prevent double recovery of medical expenses.[8]
[7] Relying on Otteman v. Interstate Fire & Cas. Co., Inc.,[9] Mary argues that State Farm waived its right to rely on the exclusion by its partial denial of her claim for medical payments benefits. We are not persuaded by this argument. Otteman involved a claim by an insurance agent against his errors and admissions liability *297 insurer. The policy provided that the insured could not settle a liability claim asserted against him without the written consent of the insurer. We held that the insurer's unreasonable delay in processing a third party's liability claim against its insured amounted to a denial of coverage and constituted a waiver of any right to enforce the policy provision requiring its consent to settlement. Here, the medical payments coverage is not liability insurance, and no claim was made against Mary. Instead, Mary had potential claims against her insurer and a third party for the same medical expenses. Neither the provisions of the policy nor State Farm's denial of benefits restricted Mary from asserting a claim against the third party. The policy simply provided that if she were successful in recovering an amount equal to or greater than the amount of her medical expenses, State Farm would "owe nothing." Otteman does not support Mary's waiver argument in these circumstances.
[8] Finally, we are not persuaded by Mary's argument that the policy provision in question should be declared void in violation of public policy. As noted, other courts have found the same policy provision enforceable, implicitly, and in one case explicitly, rejecting a claim that the provision is contrary to public policy.[10] Mary has provided no authority to the contrary. We conclude, as other courts have, that the provision is an enforceable contractual bar against double recovery of medical expenses.
[9] It is undisputed that the amount which Mary recovered from the party responsible for her injuries exceeded the amount of medical expenses she claimed from State Farm under her medical payments coverage. We note that she was also reimbursed by her health insurance carrier for some of the expenses, but we do not consider these reimbursements pertinent to our analysis. We conclude as a matter of law that because Mary recovered more than the amount of her medical expenses in her settlement with a third party, State Farm had no contractual obligation to Mary under the plain language of its medical payments coverage provisions.
In McGinn, we reasoned that because the plaintiff had not filed a claim against his medical payments coverage, he could not claim a breach of contract with respect to those policy provisions. Similarly here, where the undisputed facts demonstrate that Mary has no legal entitlement to medical payments benefits under the State Farm policy, she has no cognizable claim for breach of contract.

(b) Other Individual Claims
[10-13] The claims asserted by Mary in this case are the same as those asserted by the plaintiff in McGinn. We noted in that case that each of the claims "incorporates the existence of the contract for insurance and each is dependent on the viability of [the named plaintiffs] breach of contract claim."[11] We concluded that because McGinn had not stated a viable claim for breach of contract, he could not state a cause of action with respect to his remaining claims. Here, we conclude that because Mary's breach of contract claim fails as a matter of law, so too must the remainder of her claims.

(c) Class Action Claims
[14-17] The right of a party to sue as representative of a class may be determined *298 on a motion for summary judgment.[12] In determining whether a class action is properly brought, considerable discretion is vested in the trial court.[13] Class actions are authorized under Neb. Rev.Stat. § 25-319 (Reissue 1995), which provides: "When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." In order to justify class action treatment, there must exist "both a question of common or general interest and numerous parties so as to make it impracticable to bring all the parties before the court."[14] Class certification may be denied even if a named plaintiff meets all of the technical requirements of § 25-319.[15]
[18] Because her breach of contract claim against State Farm is without merit as a matter of law, Mary lacks commonality with members of the purported class on whose behalf she sought to litigate similar breach of contract claims. The district court did not err in concluding that because Mary could not maintain her individual cause of action against State Farm, she was unqualified to represent the purported class.[16]

(d) Expert Testimony
Mary assigns error in the determination by the district court that her expert witnesses lacked foundation for their opinions concerning the alleged scheme by which State Farm administered and charged premiums for medical benefits coverage. Because we conclude as a matter of law that Mary had no individual entitlement to medical payments benefits and cannot sue as the representative of the purported class, the manner in which State Farm may have administered such medical benefits with respect to other policyholders is not before us, and we need not reach this assignment of error.

2. THOMAS LYNCH
Thomas' personal interest in this case is somewhat unclear from the record. He is the named insured on the State Farm policy, but there is no indication that he has ever asserted a medical payments claim in his own behalf. As such, his claims would be barred by our holding in McGinn However, at oral argument, counsel suggested that Thomas is a co-claimant with his wife, Mary. Assuming without deciding that to be so, his assignments of error are without merit for the reasons discussed herein with respect to Mary's claim.

V. CONCLUSION
For the reasons discussed, we conclude that the district court did not err in granting State Farm's motion for summary judgment and dismissing this action. Accordingly, we affirm.
AFFIRMED.
*299 WRIGHT, J., participating on briefs.
McCORMACK, J., not participating.
NOTES
[1] McGinn v. State Farm Mut. Auto. Ins. Co., 268 Neb. 843, 689 N.W.2d 802 (2004).
[2] Easilick v. Lueder Constr. Co., 274 Neb. 467, 741 N.W.2d 628 (2007); Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[3] Id.
[4] McGinn v. State Farm Mut. Auto. Ins. Co., supra note 1; Guerrier v. Mid-Century Ins. Co., 266 Neb. 150, 663 N.W.2d 131 (2003).
[5] McGinn v. State Farm Mut. Auto. Ins. Co., supra note 1; 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 232:42 (2000).
[6] Guerrier v. Mid-Century Ins. Co., supra note 4; Reisig v. Allstate Ins. Co., 264 Neb. 74, 645 N.W.2d 544 (2002).
[7] Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006); Poulton v. State Farm Fire & Cas. Cos., 267 Neb. 569, 675 N.W.2d 665 (2004).
[8] See, State Farm Mut. Auto. Ins. Co. v. Walker, 234 Ga.App. 101, 505 S.E.2d 828 (1998); State Farm Mut. Auto. Ins. Co. v. Brewer, 221 Ga.App. 745, 472 S.E.2d 529 (1996); Maynard v. State Farm Mut. Auto. Ins. Co., 902 P.2d 1328 (Alaska 1995).
[9] Otteman v. Interstate Fire & Cas. Co., Inc., 172 Neb. 574, 111 N.W.2d 97 (1961).
[10] See Maynard v. State Farm Mut. Auto. Ins. Co., supra note 8.
[11] McGinn v. State Farm Mut. Auto. Ins. Co., supra note 1, 268 Neb. at 849, 689 N.W.2d at 806.
[12] Blankenship v. Omaha P.P. Dist., 195 Neb. 170, 237 N.W.2d 86 (1976).
[13] Berkshire & Andersen v. Douglas County Board of Equalization, 200 Neb. 113, 262 N.W.2d 449 (1978); Gant v. City of Lincoln, 193 Neb. 108, 225 N.W.2d 549 (1975).
[14] Hoiengs v. County of Adams, 245 Neb. 877, 901, 516 N.W.2d 223, 240 (1994).
[15] See Berkshire & Andersen v. Douglas County Board of Equalization, supra note 13.
[16] See McGill v. Automobile Ass'n of Michigan, 207 Mich.App. 402, 526 N.W.2d 12 (1995).