748 N.W.2d 645 (2008)
275 Neb. 622
BUILDERS SUPPLY CO., INC., Appellant
v.
Barbara J. CZERWINSKI, Appellee.
No. S-06-1138.
Supreme Court of Nebraska.
May 9, 2008.
*649 Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.
Stephen H. Nelsen, James M. Bausch, and Tessa P. Hermanson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Appellant Builders Supply Co., Inc. (Builders), filed a complaint in the district court for Douglas County in which it alleged that appellee Barbara J. Czerwinski owed it $1,448,607.04 plus prejudgment and postjudgment interest and costs under a guaranty agreement (Guarantee) executed by Czerwinski and her late husband, John C. Czerwinski, Jr. (Jack). The Guarantee secured sums owed to Builders by Benchmark Homes, Inc. (Benchmark), under a separate credit agreement (Agreement). Czerwinski denied certain of Builders' allegations. Czerwinski's answer effectively gave notice of two defenses. First, Czerwinski claimed that as a result of Builders' release of certain collateral securing the Guarantee, her liability under the Guarantee had been completely discharged. Second, Czerwinski claimed that, if liable, her liability under the Guarantee was limited to $525,000.
Builders and Czerwinski filed cross-motions for summary judgment. Following an evidentiary hearing, the district court entered a judgment order in which it sustained Czerwinski's motion, overruled Builders' motion, and dismissed the case. Builders appeals.
We conclude that Builders established its entitlement to judgment and that Czerwinski did not establish her defenses and was not entitled to summary judgment. We therefore reverse the district court's order that sustained Czerwinski's motion for summary judgment and overruled Builders' motion for summary judgment and remand the cause with directions that judgment be entered in favor of Builders in the amount of $1,427,714.97 plus prejudgment and postjudgment interest and costs, and we further direct that proceedings be conducted on remand to determine interest and costs.

STATEMENT OF FACTS
Jack and Czerwinski were officers in Benchmark, a company that was in the business of constructing homes. On December 13, 1989, Builders, a building supply company, entered into an Agreement with Benchmark by which Builders agreed to continue to sell building supplies to Benchmark on an open account. Czerwinski is not a signatory to the Agreement. The Agreement acknowledged an outstanding indebtedness of Benchmark to Builders and set forth the manner in which that indebtedness would be paid. The Agreement also provided for future indebtedness and stated, inter alia, *650 that the amount of credit to be extended to Benchmark would be $525,000.
Also on December 13, 1989, Jack and Czerwinski executed a separate Guarantee in favor of Builders. The purpose of the Guarantee was to provide for the repayment to Builders of amounts advanced by Builders to Benchmark in the event of Benchmark's default. The Guarantee provided, in pertinent part, as follows:
Czerwinski [and Jack] absolutely and unconditionally guarantee ... prompt repayment when due of all amounts advanced in the past ... and of all of amounts advanced in the future by Builders to Benchmark for use in Benchmark's conduct of its business. If Benchmark defaults in the payment of such indebtedness, Czerwinski [and Jack] will pay to Builders ... the amount then due.
The Guarantee did not include or refer to the $525,000 credit figure contained in the Agreement. The Guarantee did not restrict Builders' ability to release the collateral and did not require that notice be given to the guarantors of the release of collateral. The Guarantee permitted Builders to release any one of the guarantors and provided that the liability of Czerwinski and Jack under the Guarantee was joint and several.
The Guarantee was secured in part by deeds of trust on certain properties, including an office building owned by Jack. Although she was not listed as an owner of the office building, Czerwinski signed the office building deed of trust. The deeds of trust stated generally that they were given to secure Benchmark's account indebtedness to Builders.
Sometime prior to March 26, 1991, Benchmark satisfied the original indebtedness set forth in the Agreement. On March 26, at Jack's request, Builders released its deed of trust on the office building. Subsequent thereto, Jack and Czerwinski executed deeds of trust on the office building in favor of creditors other than Builders. In this regard, the record contains evidence of deeds of trust dated between 1999 and 2005, which by their terms were secured by the office building. Czerwinski admitted that she signed certain of these deeds of trust. Specifically, the evidence shows that in January 1999, Czerwinski signed a deed of trust in the amount of $100,000 in favor of Nebraska State Bank granting such entity a lien on the office building. The evidence further shows that in May 2000, Czerwinski signed a deed of trust in the amount of $600,000 in favor of Transnation Title Insurance Company granting such entity a lien on the office building. The evidence indicates that this $600,000 encumbrance was present on the office building when it was sold in 2006.
Beginning in 2002, Builders began extending large amounts of credit to Benchmark. Specifically, the evidence shows that from November 1, 2005, through March 9, 2006, Builders extended credit on an open account basis to Benchmark such that after credits for returned materials and supplies, Benchmark owed a total of $1,427,714.97 as of June 16, 2006.
Jack died on February 21, 2006. In approximately April 2006, Benchmark filed bankruptcy. On July 20, the office building was sold, resulting in net sale proceeds of approximately $849,000. The record generally indicates that the sale proceeds, net of the expenses of sale and real estate taxes, were paid to satisfy various lienholders on the office building whose encumbrances had been filed subsequent to Builders' release of its deed of trust in 1991.
On March 13, 2006, Builders filed a complaint against Czerwinski in which it alleged *651 that it had advanced certain sums to Benchmark and that Benchmark was in default in the repayment of its account. Builders further alleged that Czerwinski had entered into the Guarantee to secure the repayment of those funds and that as a result, Czerwinski, as guarantor, owed Builders the principal sum of $1,448,607.04 plus prejudgment and postjudgment interest and costs.
On June 2, 2006, Czerwinski filed an answer, which she amended on August 11. In her amended answer, Czerwinski denied allegations in the complaint that she was indebted to Builders under the Guarantee. Czerwinski's answer effectively raised certain defenses. Initially, Czerwinski alleged that she should be discharged from any liability on the Guarantee because Builders had released its lien on the office building, thereby impairing the collateral used to secure the Guarantee. She also alleged that the Guarantee was subject to a credit limit of $525,000 found in the separate Agreement and that as a result, the maximum sum for which she could be liable as a guarantor was $525,000.
On July 6, 2006, Builders filed a motion for summary judgment. On September 18, Czerwinski filed a motion for summary judgment based on the defenses raised in her answer. The cross-motions for summary judgment came on for hearing on September 29. In support of its motion, Builders introduced the Guarantee, as well as several affidavits and documentary evidence, to establish that Benchmark owed it a total of $1,427,714.97, for which Czerwinski was liable under the Guarantee. Builders also introduced evidence that showed that subsequent to its release of its lien on the office building, several deeds of trust on the office building in favor of creditors other than Builders had been executed and that Czerwinski had signed certain of these deeds of trust. In support of her motion, Czerwinski introduced into evidence several affidavits, two of which were her own. In both of her affidavits, Czerwinski stated, inter alia, that "[a]t no time did Builders ... advise me that [it] had agreed with [Jack] to release the liens on the [office building] given as collateral for the Guarantee that is the subject of this proceeding."
In a judgment order filed October 10, 2006, the district court sustained Czerwinski's motion, overruled Builders' motion, and dismissed Builders' complaint with prejudice. In its order, the district court concluded that the Agreement, the Guarantee, and the deeds of trust should be construed together and further concluded that the documents so construed demonstrated that Czerwinski "was never obligated [to Builders] for more than $525,000.00 under the Guarantee." The district court found that the deed of trust on the office building had been released at Jack's request and that Czerwinski "was never advised of this action by [Builders]." However, the district court did not make a finding that Czerwinski was unaware of the release and made no finding with respect to Czerwinski's participation in the subsequent encumbering of the office building. The district court concluded that Czerwinski, as guarantor, was entitled to be subrogated to the collateral given to secure Benchmark's indebtedness to Builders and that "[b]y releasing the collateral, [Builders] deprived [Czerwinski] of her right of subrogation, and [Czerwinski] is released from any liability under the Guarantee as a matter of law." As noted, the district court sustained Czerwinski's motion for summary judgment, overruled Builders' motion for summary judgment, and dismissed Builders' complaint with prejudice.
Builders appeals.

*652 ASSIGNMENTS OF ERROR
On appeal, Builders assigns three errors that can be restated as claiming that the district court erred in sustaining Czerwinski*s motion for summary judgment, overruling Builders' motion for summary judgment, and dismissing Builders' complaint with prejudice.

STANDARDS OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Lynch v. State Farm Mut. Auto. Ins. Co., 275 Neb. 136, 745 N.W.2d 291 (2008). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

BUILDERS ESTABLISHED ITS ENTITLEMENT TO JUDGMENT
Initially, we note that the instant case was before the district court on cross-motions for summary judgment. Builders offered the Guarantee and other evidence, and Czerwinski offered evidence designed to establish defenses that would relieve or reduce her obligations under the Guarantee. The district court granted Czerwinski's motion for summary judgment, denied Builders' motion for summary judgment, and dismissed the complaint. As explained below, we conclude that Builders established its entitlement to judgment and that Czerwinski did not establish her defenses. We reverse the district court's order and direct that judgment be entered in favor of Builders in the amount of $1,427,714.97 plus prejudgment and postjudgment interest and costs, and we further direct that proceedings be conducted on remand to determine interest and costs.
When cross-motions for summary judgment have been ruled upon by the district court, the appellate court may determine the controversy that is the subject of those motions or may make an order specifying the facts that appear without substantial controversy and direct such further proceedings as it deems just. See State Farm Mut. Auto. Ins. Co. v. Cheeper's Rent-A-Car, 259 Neb. 1003, 614 N.W.2d 302 (2000). This court has stated that the primary purpose of a summary judgment procedure is to pierce the allegations made in the pleadings and show conclusively that the controlling facts are other than as pled and thus resolve, without the expense and delay of trial, those cases where there exists no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom, and where the moving party is entitled to judgment as a matter of law. See Andres v. McNeil Co., 270 Neb. 733, 707 N.W.2d 777 (2005).
A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Pogge v. American Fam. Mut. Ins. Co., 272 Neb. 554, 723 N.W.2d 334 (2006). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. Id.
The record in the instant case reflects that Builders offered into evidence copies of the Guarantee and other documents, *653 including evidence of the amount of the debt owed by Benchmark to Builders. By its terms, the Guarantee was absolute and unconditional. It did not limit the amount guaranteed and did not expire after a period of time. It did not contain restrictions relating to the release of the collateral and did not require notice of release. As alleged in its complaint, Builders demonstrated its entitlement to judgment based on the Guarantee and the amount owed by Czerwinski to which it was entitled. The burden then shifted to Czerwinski to show that Builders was not entitled to judgment as a matter of law. Czerwinski offered evidence by which she sought to establish defenses such that her obligation under the Guarantee was not enforceable or, if enforceable, was for an amount less than the debt of $1,427,714.97 that had been established by the evidence. Although the district court found merit in the defenses, as elaborated below, we conclude as a matter of law that Czerwinski failed to establish her defenses and that therefore, the district court erred in entering judgment in favor of Czerwinski and against Builders and in dismissing Builders' complaint. Given the ultimate inferences from the evidence, Builders was entitled to judgment.

THE DISTRICT COURT ERRED IN DETERMINING CZERWINSKI WAS NEVER LIABLE FOR MORE THAN $525,000 UNDER THE GUARANTEE
Integral to our resolution of this appeal is a determination of the amount of debt to which Czerwinski was exposed under the Guarantee. For completeness, we note that given the posture and evidence in this case, we need not and do not comment on the potential contribution, if any, to which Czerwinski may be entitled relative to her indebtedness to Builders. On appeal, Builders claims that the district court erred when it determined that Czerwinski "was never obligated for more than $525,000.00 under the Guarantee." We agree with Builders that the district court erred in this determination.
Builders notes that the Guarantee provides as follows:
Czerwinski [and Jack] absolutely and unconditionally guarantee ... prompt repayment when due of all amounts advanced in the past ... and of all amounts advanced in the future by Builders to Benchmark for use in Benchmark's conduct of its business. If Benchmark defaults in the payment of Such indebtedness, Czerwinski [and Jack] will pay to Builders ... the amount then due.
Builders claims that neither this nor any other language in the Guarantee, nor, to the extent applicable, any other document, limits Czerwinski's liability under the Guarantee and that as a result, Czerwinski is liable to Builders for all sums advanced by Builders to Benchmark under the Agreement.
Czerwinski claims that notwithstanding the "absolute[ ] and unconditional[ ]" language contained in the Guarantee, she does not owe money to Builders in general and that in particular, she does not owe the full amount that Builders advanced to Benchmark. Czerwinski asserts that the Agreement, the Guarantee, and the deeds of trust were made as part of one transaction and should be construed together for purposes of interpretation. Czerwinski relies on cases similar to Gary's Implement v. Bridgeport Tractor Parts, 270 Neb. 286, 702 N.W.2d 355 (2005), in which we stated that when documents are related and part of one transaction, their substance will be read together. Construing the documents together, Czerwinski asserts and the district court agreed that the Guarantee is subject to the language in the Agreement that stated that "[t]he maximum amount of credit to be extended to Benchmark shall be ... $525,000.00." Czerwinski claims *654 that the district court was correct when it determined that $525,000 was the maximum sum for which she was ever exposed as guarantor under the Guarantee.
We conclude as a matter of law that the Guarantee is unambiguous and that its meaning is to be determined by the language of the Guarantee itself. The Guarantee contains no limits on Czerwinski's liability to Builders, and the district court erred as a matter of law in limiting Czerwinski's potential liability under the Guarantee at $525,000.
We begin our analysis by noting the rules regarding the interpretation of guaranty agreements. A guaranty is a contract and is a collateral undertaking by one or more persons to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance. See Rodehorst v. Gartner, 266 Neb. 842, 669 N.W.2d 679 (2003). A guaranty is interpreted using the same general rules as are used for other contracts. State ex rel. Wagner v. Amwest Surety Ins. Co., 274 Neb. 110, 738 N.W.2d 805 (2007). We have stated that "Nebraska adheres to the rule of strict construction of guaranty contracts.... `When the meaning of the contract [guaranty] is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.'" Federal Deposit Ins. Corp. v. Heyne, 227 Neb. 291, 293, 417 N.W.2d 162, 163 (1987) (quoting Hunter v. Huffman, 108 Neb. 729, 189 N.W. 166 (1922) (syllabus of court)). The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007).
Czerwinski urges us to construe the Guarantee with the Agreement and thereby limit the terms of the Guarantee. When, as here, the Guarantee is unambiguous, we do not vary its terms by construing it with another instrument. In this regard, we have stated:
The statement that contemporaneous instruments may be treated and interpreted as one means only that this will be done when it will effectuate the intention and if the provisions of the two instruments if put together will not be incompatible. The court may not do violence to a complete, unambiguous contract by consolidating it with another writing if the effect of doing so would be to avoid an essential part of the contract. If contracts or writings are in effect independent they should not be construed together even though the same parties and the same subject matter may be concerned.
Gerdes v. Omaha Home for Boys, 166 Neb. 574, 585-86, 89 N.W.2d 849, 856 (1958).
Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Plambeck v. Union Pacific RR. Co., 244 Neb. 780, 509 N.W.2d 17 (1993). See, also, Kluver v. Deaver, 271 Neb. 595, 714 N.W.2d 1 (2006). Any ambiguity in a guaranty should arise in the first instance from the guaranty itself, and neither a court nor the parties will be permitted to create an ambiguity when none exists. See Knox v. Cook, 233 Neb. 387, 446 N.W.2d 1 (1989) (stating that fact that parties to guaranty suggest opposing interpretations to document does not by itself compel conclusion that guaranty is ambiguous).
The language of the Guarantee is unambiguous. Czerwinski, as a coguarantor, "absolutely and unconditionally guarantee[d] *655 prompt repayment when due of all amounts advanced." No other language in the Guarantee amounts to a meaningful limitation on this provision of the Guarantee. No language in the Guarantee limits Czerwinski's liability, and Czerwinski did not contract with Builders in the Guarantee to a limit on Builders' credit to Benchmark.
We recognize that the Agreement contains language relative to the $525,000 upon which Czerwinski relies. However, a guaranty is an independent contract that imposes responsibilities different from those imposed in an agreement to which it is collateral. See National Bank of Commerce Trust & Sav. Assn. v. Katleman, 201 Neb. 165, 266 N.W.2d 736 (1978). It is the guaranty agreement that contains the express condition on the guarantor's liability and that defines the obligations and rights of both guarantor and guarantee. Id. The language relied upon by Czerwinski in the Agreement relative to the $525,000 merely described Builders' obligation to extend credit to Benchmark to a specific amount.
Other courts have observed, and we agree, that in the absence of a limit in a guaranty, the presence of a credit limit in a separate credit agreement does not create a limit in the corresponding guaranty. See, e.g., Fertig v. Bartles, 78 F. 866 (D.N.J.1897) (stating that clause in separate contract limiting credit amount to be extended to borrower did not restrict guarantor's liability because clause was not inserted for guarantor's benefit, and there was no similar clause in contract with guarantor limiting liability); Clark v. Walker-Kurth Lumber Co., 689 S.W.2d 275, 279 (Tex.App.1985) (stating that when "the contract between the creditor and principal debtor limits the obligation of the former to extend credit to the latter up to a specified amount, such limitation does not condition the contract by which the guarantor agrees to guaranty the payment of all credit extended to the debtor"); Bay Oil Co. v. Vilas, 237 Wis. 603, 605, 296 N.W. 595, 597 (1941) (stating that credit limit in contract between creditor and principal "was not for the benefit of the... guarantor but for that of the creditor, and it does not modify or condition the separate contract of guaranty which contains no specific limitation or condition"). The fact that the Agreement in this case refers to $525,000 does not restrict the liability of the guarantors to that amount in view of the breadth of the language of the Guarantee itself. See Missouri Farmers Ass'n, Inc. v. Coleman, 676 S.W.2d 855 (Mo.App.1984). Furthermore, the liability of the guarantor is not discharged by the extension of more credit than the amount specified in the separate credit agreement. Clark v. Walker-Kurth Lumber Co., supra.
The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determination made by the court below. Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007). Czerwinski executed a Guarantee in which, as a matter of law, we conclude that she unambiguously guaranteed the payment of "all amounts advanced" by Builders to Benchmark. We conclude that the district court erred as a matter of law when it determined by reference to the Agreement that Czerwinski was never liable for more than $525,000 under the Guarantee. We reverse that portion of the district court's order.

THE DISTRICT COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT CZERWINSKI WAS RELEASED FROM LIABILITY UNDER THE GUARANTEE AND SUSTAINED CZERWINSKI'S MOTION FOR SUMMARY JUDGMENT
Having concluded that Builders established its entitlement to judgment and that *656 the district court erred when it determined that any liability Czerwinski faced under the Guarantee was limited to $525,000, we next consider the correctness of the district court's ruling accepting Czerwinski's defense and granting summary judgment in favor of Czerwinski based on the court's determination that Czerwinski was released from liability under the Guarantee as a result of Builders' release of its deed of trust on the office building.
On appeal, Builders claims that the district court erred when it concluded that "[b]y releasing the collateral, [Builders] deprived [Czerwinski] of her right of subrogation, and [Czerwinski was] released from any liability under the Guarantee as a matter of law." We agree with Builders that this conclusion was error. The ultimate inference from the facts established Builders' allegations and failed to establish Czerwinski's impairment of collateral defense. As explained below, although Builders released the deed of trust on the office building as collateral in 1991, the release did not violate an obligation under the Guarantee, and based on the evidence, Czerwinski is estopped from succeeding on a claim of impairment of collateral because, by Czerwinski's use of the office building as collateral to secure other indebtedness starting in 1999, Czerwinski was not deprived by Builders of preventing the loss protected by the Guarantee. See National Bank of Commerce Trust & Sav. Assn. v. Katleman, 201 Neb. 165, 266 N.W.2d 736 (1978). Accordingly, giving Builders as the party against whom Czerwinski's summary judgment was entered the benefit of all reasonable inferences deducible from the evidence, see Lynch v. State Farm Mut. Auto. Ins. Co., 275 Neb. 136, 745 N.W.2d 291 (2008), we conclude the district court erred as a matter of law when it granted Czerwinski's motion for summary judgment, and we reverse that portion of the district court's order.
As noted, under the terms of the Guarantee, Czerwinski "absolutely and unconditionally guarantee[d]" all sums advanced by Builders to Benchmark under the Agreement. Pursuant to this language, Czerwinski's obligation under the Guarantee was absolute.
An absolute guaranty is a contract by which the guarantor has promised that if the debtor does not perform his obligation or obligations, the guarantor will perform some act for the benefit of the creditor.... An absolute guaranty of payment is enforceable at any time without demand and notice of default.
Production Credit Assn. of the Midlands v. Schmer, 233 Neb. 749, 755, 448 N.W.2d 123. 233 Neb. 749, 448 N.W.2d 123, 128 (1989). See Home Savings Bank v. Shallenberger, 95 Neb. 593, 600, 146 N.W. 993, 996 (1914) (stating that under absolute guaranty, "`guarantor makes an absolute promise that a particular thing shall be done, and thereby assumes an active, absolute duty to see that it is done, and must, at his peril, perform the promise'"). We further note that the Guarantee does not prohibit Builders from releasing the collateral, and because the language of the Guarantee does not require that the guarantors be notified by Builders of any such release, we do not read a notice requirement into the Guarantee. See Production Credit Assn. of the Midlands v. Schmer, 233 Neb. at 755, 448 N.W.2d at 128 (stating that if "[t]here is no provision in the guaranty requiring [the creditor] to give notice to [the guarantor] of its transactions [involving the guaranteed debt] [s]uch a notice requirement cannot be read into the contract"). Finally, we note that the Guarantee does permit the release of any one of the guarantors.
Czerwinski acknowledges both the terms of the Guarantee and the absolute nature *657 of those terms. However, Czerwinski claims as a defense that as a guarantor, she had a right to be subrogated to the collateral given to secure the Guarantee and that by virtue of Builders' release of its deed of trust on the office building, her right to be subrogated to that collateral for the satisfaction of the guaranteed debt was impaired. In argument, she claims that she was unaware of the release of the deed of trust on the office building, although her affidavit in evidence states merely that Builders did not notify her of the release. Czerwinski claims that the release of the debt on the office building impaired her resort to the office building to satisfy Benchmark's debt to Builders and that as a result of such release, she should be discharged from all liability under the Guarantee.
For the sake of completeness, we note that Czerwinski's arguments assume that if she were successful in establishing her discharge defense, she would be discharged from all, not merely some, liability under the Guarantee. Because the record does not support the defense, we need not resolve the extent to which a successful defense could release Czerwinski from her obligations under the Guarantee. National Bank of Commerce Trust & Sav. Assn. v. Katleman, 201 Neb. 165, 174, 266 N.W.2d 736, 742 (1978) (stating generally that "a guarantor is not liable on his own contract where the creditor has violated his own obligations and deprived the guarantor of the means of preventing the loss protected by the guaranty"). But cf. First State Bank v. Peterson, 205 Neb. 814, 816-17, 290 N.W.2d 634, 635 (1980) (stating that "[i]t is a general rule of suretyship that a surety is discharged only pro tanto by any wrongful loss or release of security").
Nebraska jurisprudence supports the general legal proposition to which Czerwinski alludes that despite the absolute nature of a guaranty, a creditor can act or fail to act in such a manner as to impair collateral securing a guaranty and that such impairment of collateral, in the absence of certain other factors, can be a defense to the guaranty's enforceability. This court has noted that regardless of whether a guaranty is absolute or conditional,
[t]he general rule is that a surety or guarantor is entitled to be subrogated to the benefit of all the security and means of payment under the creditor's control and, therefore, in the absence of assent, waiver, or estoppel, he is generally released by an act of the creditor which deprives him of such right.
Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., 195 Neb. 292, 298, 237 N.W.2d 645, 649 (1976) (emphasis supplied). See Myers v. Bank of Niobrara, 215 Neb. 29, 336 N.W.2d 608 (1983) (citing Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., supra, and concluding under the facts that guarantors waived right to object to creditor's release of collateral and that therefore, creditor's release of collateral did not discharge guarantors).
As noted above, this court has recognized that the defense that a guarantor is discharged by a creditor's impairment of collateral is not available if the guarantor waived the defense, assented to the creditor's acts, or is otherwise estopped from succeeding on the defense. See Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., supra. The defense can be waived by an express provision in the guaranty agreement or by the guarantor's conduct. See Myers v. Bank of Niobrara, supra (enforcing express waiver provision in guaranty agreement). See Minnesota Fed. S. & L. Assn. v. Central Enterprises, Inc., 311 Minn. 46, 247 N.W.2d 46 (1976) *658 (discussing express waiver in guaranty and waiver by guarantor's conduct).
In considering Czerwinski's defense, we understand that Builders does not claim that Czerwinski assented to the initial release of the deed of trust on the office building that ultimately led to the loss of security. Further, we do not believe that Builders is claiming that Czerwinski waived her defense by conduct. However, Builders does claim that the discharge defense is unavailable because Czerwinski expressly waived it in the Guarantee or that in the alternative, by virtue of her subsequent acts, Czerwinski is estopped from succeeding on the defense. Builders thus argues that notwithstanding the release of the deed of trust on the office building, Czerwinski is nevertheless liable under the Guarantee and that the district court erred in determining Czerwinski's liability under the Guarantee had been discharged.
With respect to waiver, Builders relies on §§ 3 and 8 of the Guarantee in support of its argument that Czerwinski expressly waived the impairment collateral defense. Section 3 of the Guarantee on which Builders relies provides in part that "Builders may alter, compromise, accelerate, extend or change the time or manner of payment of any indebtedness, increase or reduce the rate of interest thereon, or add or release any one or more other guarantors." Although it is of interest that this language expressly permits Builders the latitude to release a coguarantor, nothing in this language either expressly permits or precludes Builders from the release of collateral securing the Guaranty, and we do not find § 3 dispositive of our analysis.
Section 8 of the Guarantee on which Builders further relies provides, inter alia, as follows:
Czerwinski waives any and all defenses, claims, and discharges of Builders, or any other obligor, pertaining to the indebtedness guaranteed herein, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the undersigned will not assert, plead, or enforce against Builders any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, anti-deficiency statute, fraud, incapacity, minority, usury, illegality, or unenforceability which may be available to Benchmark or any other person liable in respect of any indebtedness or any setoff available against Builders to Benchmark or any such other person, whether or not on account of a related transaction.
Examining the language of § 8, we again disagree with Builders' assertion that by virtue of the provisions in the Guarantee, Czerwinski expressly waived her discharge defense. According to the language of § 8, Czerwinski waived any defenses that Builders might possess, not defenses that she or even Benchmark might possess. While the reference to "Builders" may be inadvertent, we do not rely on § 8 for the proposition urged by Builders.
With respect to estoppel, Builders claims that by certain of her acts, Czerwinski is estopped from succeeding on her discharge defense and is therefore liable under the Guarantee. In this regard, Builders notes that subsequent to its release of its lien on the office building in 1991, Czerwinski signed deeds of trust starting in 1999 encumbering the office building, and that it is these subsequent encumbrances that directly led to the loss of the office building as security. Builders claims that the liens Czerwinski placed on the office building demonstrate that Czerwinski was aware the office building was no longer encumbered in favor of Builders *659 and was available to serve as collateral elsewhere and that Czerwinski's own acts deprived her of "the means of preventing the loss protected by the guaranty." See National Bank of Commerce Trust & Sav. Assn. v. Katleman, 201 Neb. 165, 174, 266 N.W.2d 736, 742 (1978).
In support of its estoppel argument, Builders relies upon evidence in the summary judgment record, including Czerwinski's responses to Builders' requests for admissions. In her responses, Czerwinski admitted that in 1999, she signed a deed of trust on the office building in favor of Nebraska State Bank in the amount of $100,000. Czerwinski also admitted that in 2000, she signed a deed of trust in favor of Transnation Title Insurance Co. in the amount of $600,000. In the title insurance on the office building effective June 22, 2006, a defect is noted as to this $600,000 indicating that this deed of trust is in default. Builders argues that Czerwinski's participation in placing subsequent liens on the office building as early as 1999 demonstrates Czerwinski's early knowledge of the release and that Czerwinski's acts, rather than those of Builders, impaired the collateral. Builders contends that the $600,000 encumbrance placed on the office building in 2000 to which Czerwinski consented suggests not only that Czerwinski knew of the availability of the office building to secure debt, but also that this $600,000 was in fact a significant encumbrance when the office building sold in 2006. Builders therefore claims that Czerwinski should be estopped from succeeding on her claim that she should be discharged from her obligation under the Guarantee by virtue of Builders' release of its deed of trust in 1991.
In response, Czerwinski claims in her brief that she was unaware of Builders' release of the deed of trust on the office building. In support of her argument, Czerwinski appears to rely on statements in her affidavits in which she stated that "[a]t no time did Builders ... advise me that [it] had agreed with [Jack] to release the liens on the [office building] given as collateral for the Guarantee that is the subject of this proceeding."
Czerwinski's response to Builders' estoppel argument is incomplete and unpersuasive, and the inferences from the evidence do not support her defense. As we have noted, the Guarantee did not restrict Builders' ability to release its collateral and did not require that Builders give notice to the guarantors if it did release the collateral. In the absence of such a provision, Builders was not required to give Czerwinski notice of its release of the deed of trust on the office building. See Production Credit Assn. of the Midlands v. Schmer, 233 Neb. 749, 448 N.W.2d 123 (1989). Furthermore, the evidence in her affidavits that Builders failed to "advise" her of the release of its collateral does not necessarily support her claim that she was unaware of the fact that the deed of trust on the office building had been released. To the contrary, the record indicates that she signed deeds of trust on the office building in 1999 and 2000 for $100,000 and $600,000 respectively, suggesting that she was aware of the availability of the office building to serve as collateral in a substantial amount. The $600,000 encumbrance remained into 2006, the inference from which is that through her actions, Czerwinski impaired the office building collateral rather than Builders.
This case was before the district court on cross-motions for summary judgment. Once Builders established that it was entitled to judgment as a matter of law, the burden shifted to Czerwinski to establish her entitlement to summary judgment which was based on her defense of impairment of collateral. Pogge v. American *660 Fam. Mut. Ins. Co., 272 Neb. 554, 723 N.W.2d 334 (2006). Upon appeal, when reviewing a summary judgment, this court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Lynch v. State Farm Mut. Auto. Ins. Co., 275 Neb. 136, 745 N.W.2d 291 (2008).
As we have discussed, Czerwinski failed to carry her burden of establishing her defense and, to the contrary, the inferences from the evidence favor Builders. Thus, Czerwinski is estopped from succeeding on her defense of discharge based on impairment of collateral and she failed to establish her entitlement to judgment. Accordingly, we conclude that the district court erred as a matter of law in granting Czerwinski's motion for summary judgment and we reverse that portion of the district court's order.

CONCLUSION
In this appeal following proceedings on cross-motions for summary judgment, we conclude that Builders established its entitlement to judgment and that Czerwinski did not establish her defenses and was not entitled to summary judgment. We therefore reverse the district court's order that sustained Czerwinski's motion for summary judgment and overruled Builders' motion for summary judgment and remand the cause with directions that judgment be entered in favor of Builders in the amount of $1,427,714.97 plus prejudgment and post-judgment interest and costs.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT and McCORMACK, JJ., not participating.