# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3005

_____

Eric D. Hayes

*Plaintiff - Appellee*

v.

Metropolitan Property and Casualty Insurance Company

*Defendant - Appellant*

_____

No. 17-3064

_____

Eric D. Hayes

*Plaintiff - Appellant*

v.

Metropolitan Property and Casualty Insurance Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2018
Filed: November 9, 2018

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Metropolitan Property and Casualty Insurance Company (Met) appeals the district court's[1] entry of judgment in favor of Eric Hayes, its insured, following a bench trial in a dispute over property coverage of a building that was destroyed by fire. We affirm.

## I.    BACKGROUND

We relate the facts which were supported by substantial evidence at the trial and from the district court's factual findings. We give deference to the district court's position as the credibility judge in this bench trial. Kaplan v. Mayo Clinic, 847 F.3d 988, 991 (8th Cir.), cert denied, 138 S. Ct. 203 (2017). Hayes's home at 480 South 6 Street, Springfield, Nebraska, was insured by Met under a homeowner's insurance policy. Hayes used the detached garage of the residence as part of a home base for his plumbing business, and in addition to living there himself with his children, he also rented out the second and third levels of the residence to a tenant and her two children. When Hayes insured the residence in 2007, Met argues that he indicated on his application that the premises were *not* used to conduct business, and were *not* used as rental property. However, the application, a five-page document, was not a

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

model of clarity on either of these two points. It was apparent that the form was not filled out by hand because pre-printed "x's" were used in the checked boxes. Hayes testified that he did not recall personally completing the application in 2007; that he worked with an independent insurance agent when it was filled out, and it was also likely filled out with information from his sister, because his signature "stamp" was used in the signature line instead of his actual handwritten signature, and she had his authorization to use the stamp.

With regard to tenants, the form asked whether "the residence [was] held exclusively for rental?" and a pre-printed "x" was marked next to the letter "N" in answer to that question. The form also asked for number of "families" and the number "1" was printed in that box. With regard to the business, the form asked whether "[a]ny farming or other business [was] conducted on premises?" and again, a box indicating "no" was marked with a preprinted x. Hayes testified at trial that while he did maintain some plumbing supplies at the property, very little of the plumbing equipment was located in the detached garage due to limited space. He also testified that he definitely did not "run" the plumbing business out of the premises, although customers would on occasion contact him there about doing a plumbing job. Further, Hayes had a separate commercial business insurance policy to cover the plumbing business in the detached garage, (although the address for this business was inadvertently and incorrectly listed on the insurance form as 680 South 6 Street, Springfield, Nebraska, rather than 480), and Hayes testified that he believed the commercial policy adequately covered his business. Hayes did not make a claim with regard to the shop or business as a result of the fire.

On January 24, 2013, the home was destroyed by a fire. Hayes was in Haiti on a mission trip when the fire occurred. Hayes filed a claim with Met. Met made a notation as of January 28, 2013, that it believed the fire was intentionally set. By January 29, 2013, Met knew that Hayes was operating part of his business at the detached garage near the premises, and that he leased the upper portion of the

premises to tenants. Accordingly, in February 2013, Met sent Hayes a reservation of rights letter, informing him that it was investigating the circumstances surrounding the fire, and whether there had been a change in occupancy due to the business and tenants.

Hayes submitted multiple sworn proofs of loss, all of which were rejected by Met for deficiency in form and documentation. On September 18, 2013, the state fire marshal informed Met that there was insufficient evidence to charge anyone with arson in connection with the fire at the insured premises. In October 2013, while the investigation was ongoing, Met sent Hayes a policy *renewal* for the premises for the effective dates of November 2013 through November 2014. In this renewal form, there was a provision for "optional coverage" for Hayes's plumbing business venture. In January 2014, Met concluded that Hayes had made material misrepresentations on his 2007 insurance application. Met informed Hayes of this conclusion in April 2014, and email communications between the parties' lawyers ensued. Part of the discussion in that correspondence included whether, in return for agreeing not to sue Met, Hayes would accept a check to cover the balance of what was owed on Hayes's mortgage. Those talks never came to satisfactory fruition, and Hayes ultimately sent a demand letter in the amount of $669,000 on July 30, 2014.

On August 5, 2014, Met officially informed Hayes that it was denying the claim, cancelling the policy *ab initio* based upon material misrepresentations, and enclosed a check for all premiums Hayes had paid, with interest. Met also sent a check to Springfield State Bank for $127,342.97 to satisfy the balance due on Hayes's mortgage. Hayes returned the premium check and asked the bank to refuse to cash the mortgage payment. The bank nonetheless accepted the check to satisfy the mortgage payment.

Hayes sued Met in October 2014 in state court for breach of contract and bad faith denial/investigation. Met removed the matter to federal court on the basis of

-4-

diversity jurisdiction. In February 2015, the district court[2] dismissed the breach of contract claim as time-barred. The bad faith claim proceeded to a bench trial that was conducted on April 18 through April 20, 2017. The district court entered judgment for Hayes on the bad faith claim at the conclusion of trial. As relevant, the court found that the insurance form was filled out by the independent insurance agent and signature stamped by Hayes's sister. Further, the court found that the form contained ambiguous questions. Accordingly, the court held there was a lack of evidence that Hayes knowingly provided false answers on the insurance application with the intent to deceive. The court additionally held that Met did not suffer a detriment due to any possible deception, and thus had no basis for rescission. The district court found that even if Met had proved deception and detriment, it should be estopped from rescinding the contract because of the eighteen-month delay between the time Met found out Hayes had a tenant and a plumbing business (in January 2013), and the time it rescinded (August 2014). The district court found that Hayes met his burden to establish Met's bad faith refusal to to pay the claim.

Subtracting the amounts Met paid for the mortgage, the deductible and a few other small amounts, the total amount awarded by the district court was $493,455. The court also directed Hayes's counsel to submit a request for reasonable attorney fees. In a separate order, the district court awarded counsel attorney fees in the amount of $86,160. In that same order, the district court denied Met's motion to alter or amend its original order. Met appeals, alleging numerous errors discussed in turn below–its primary contention being, however, that the bad faith claim could not lie without the time-barred breach of contract claim earlier dismissed. Hayes cross-appeals the dismissal of the contract claim as time-barred.

---

[2]At the time the breach of contract claim was dismissed, the case was assigned to the Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, now retired.

## II.    DISCUSSION

We review the district court's findings of fact in the bench trial for clear error and its legal conclusions de novo, overturning the factual findings only if they are not supported by substantial evidence, based upon an erroneous view of the law, or we are left with the definite and firm conviction that an error has been made.  Kaplan, 847 F.3d at 991.

### A.    Bad Faith

As the forum state, Nebraska law applies in this case.  A bad faith claim in Nebraska is established when a plaintiff shows that (1) there was no reasonable basis for denying the claim and (2) the insurer knew of, or recklessly disregarded, the lack of reasonable basis for denying the claim.  Bailey v. Farmers Union Co-op. Ins. Co., 498 N.W.2d 591, 599 (Neb. Ct. App. 1992).

Met argues that because the contract was rescinded "ab initio," the court had no jurisdiction over a bad faith claim, Hayes had no standing to pursue a bad faith claim, and that the claim could not have existed in the absence of a contract at the time of trial.   Met further argues that the damages awarded on the bad faith claim were contrary to Nebraska law because they were actually contractual damages, rather than tort damages, and that by awarding damages, the district court effectively awarded coverage under the rescinded contract.

Hayes argues that he was not required to prevail on his breach of contract claim in order to pursue his bad faith claim under Nebraska law, citing as his primary source, Larette v. American Medical Security, Inc., 705 N.W.2d 41, 48 (Neb. 2005) (noting that an insured need not prevail on the breach of contract claim in order to prevail on the bad faith claim; that they, in effect, stand alone).  Hayes argues that, indeed, the extent of Met's bad faith conduct is illustrated by Met's investigation of

the claim for eighteen months, and that it was only then at the close of that period, did it "void" or rescind the contract "ab initio." Its stated reason for rescission was based upon facts that it knew within days of the fire.

While Met is correct that there must have been a contract at some point in time in order for there to be a bad faith claim, Met cannot insulate itself from a bad faith claim by creating the fiction that a contract never existed by voiding or rescinding it "ab initio." The cases Met cites do not stand for the proposition that an insurer can do what it did here–discover there is liability after eighteen months of "investigating" and rescind based upon misrepresentation evidence that was within its knowledge five days after the fire. Braesch v. Union Insurance Co., 464 N.W.2d 769 (Neb. 1991), does not bear the weight Met places on it. In Braesch, the policyholders settled with their insurer on a bad faith claim. The court discussed the context in which a third party might assert a bad faith claim against an insurer, and the court indicated that non-policyholders would not be allowed to bring a bad faith claim. Id. at 776. Alleging that Hayes was never a "policyholder" because Met rescinded the contract eighteen months after the fire occurred is more than a bit of a stretch. And, as noted, the district court found that Met either wrongly rescinded Hayes's insurance contract or was estopped from doing so based upon its actions. Nor does Lynch v. State Farm Mutual Automobile Insurance Co., 745 N.W.2d 291 (Neb. 2008), support Met's cause. Lynch stands for the proposition that when an insured has already recovered more than the amount of its medical damages from a third party, the insurer had no contractual duty to provide more medical benefits under the policy. Id. at 297.

Met next argues that we should reverse the district court because it wrongly shifted the burden of proof to Met on Hayes's bad faith claim. However, we disagree with Met's assertion. We instead find that Hayes met his burden of proving the elements of bad faith–that Met had no reasonable basis for denying the claim and did so with knowledge or with reckless disregard of that fact. See Bailey, 498 N.W.2d at 599. There is substantial evidence to support the district court's finding that Met

had no reasonable basis for denying the claim, and that Met had knowledge of this lack of basis. This knowledge was based upon the eighteen-month time frame between when Met first knew of a possible problem and when it "rescinded" the policy on that very basis. Further evidence of its knowledge or reckless disregard for improperly denying the claim lies in the emails exchanged wherein Met tried to secure a release from a bad faith suit in exchange for paying off Hayes's mortgage.

The only burden the district court (properly) placed upon Met at trial was to prove that it could avoid liability due to Hayes's alleged misrepresentations on his insurance contract. Lowry v. State Farm Mut. Auto. Ins. Co., 421 N.W.2d 775, 778 (Neb. 1988) (holding that insurer must plead and prove misrepresentation, reliance, and deception). We agree with the district court that Met could not prove misrepresentation or deception by Hayes, or any reliance thereupon by Met. We base this conclusion upon our previous recitation of the circumstances surrounding when the insurance form was filled out and the ambiguities on the form itself. Accordingly, the district court correctly entered judgment for Hayes on the bad faith claim.

## B.    Damages and Attorney Fees

Met next challenges the damages awarded, arguing that they were contractual and not based upon the tort of bad faith, and cites Bailey for the proposition that Hayes cannot recover policy-derived amounts for the tort action of bad faith. In Bailey, the court of appeals held that an insured could not recover for emotional distress when the harm was caused solely by breach of contract. 498 N.W.2d at 603. Here, there is no issue of emotional distress, and the district court specifically found that Met improperly rescinded the contract, or in the alternative, that it was estopped from doing so. Thus, we find that the district court properly calculated the economic damages Hayes suffered as a result of Met's bad faith refusal to pay pursuant to the provisions of the improperly rescinded contract. Ruwe v. Farmers Mut. United Ins. Co., 469 N.W.2d 129, 135 (Neb. 1991).

Met next challenges the award of attorney fees, repeating its argument that there was no contract and no liability, and that accordingly the attorney fees cannot be awarded under Nebraska Revised Statute § 44-359 (providing for reasonable attorney fees when an insured has prevailed on a claim against an insurance company). Met repeats its argument, prevalent throughout, that without a valid insurance contract, Hayes cannot recover attorney fees. First, the district court correctly found that Met had no basis for rescinding the contract, and even if it did, it should be estopped from doing so. Second, the language of the attorney fee statute belies the notion that a meritorious breach of contract action is required for fee recovery. The insured must simply successfully "bring[] an action upon any type of insurance policy." As we have stated, the legal fiction that no insurance policy exists in this case is without support. Accordingly, the action was brought "upon the policy," thus distinguishing this case from our opinion in Lienemann v. State Farm Mutual Auto Fire & Casualty Co., 540 F.2d 333, 342 (8th Cir. 1976), wherein we disallowed an award of fees under this statute because the fees were based upon tort principles, resulted in a judgment in excess of policy limits, and was unrelated to any covenant in the policy. The judgment in the instant case, unlike Lienemann, is not unrelated to any covenant in the insurance policy. As Met argued above, the damages were calculated pursuant to the policy provisions. Accordingly, we find that under the unique circumstances of this case, where a policy was improperly rescinded, we agree with the district court that the Nebraska Supreme Court would likely allow fees pursuant to Nebraska Revised Statute § 44-359. Thus, the district court did not abuse its discretion in awarding reasonable attorney fees for this action "upon the policy." Id.; see Adams Bank & Tr. v. Empire Fire & Marine Ins. Co., 506 N.W.2d 52, 55 (Neb. 1993) (abuse of discretion standard of review for § 44-359). Accordingly we affirm the award of reasonable attorney fees to Hayes.

## III. CONCLUSION

We affirm[3] the district court.

COLLOTON, Circuit Judge, concurring in the judgment.

The crux of the insurance company's position on this appeal is that Eric Hayes cannot bring a tort claim for bad faith denial of an insurance claim unless there was an underlying insurance contract. The company (Met) argues that because it rescinded the insurance contract with Hayes from the beginning, and Hayes did not timely bring a breach of contract claim, there was no contract as a matter of law, so the tort claim must fail as well.

The straightforward answer to this contention is that Hayes did bring a timely breach-of-contract claim. The district court ruled that the claim was untimely because the limitations period is twelve months, and Hayes did not bring his claim until more than a year after the loss from fire on January 24, 2013. The better reading of Nebraska law, however, is that the limitations period is five years.

The ordinary statute of limitations for contract actions in Nebraska is five years, Neb. Rev. Stat. § 25-205, and no "insurance company shall issue . . . any policy . . . containing . . . any provision limiting the time within which an action may be

---

[3]Hayes's counsel conceded at oral argument that if he prevailed on his bad faith claim, any resolution of the breach of contract claim was essentially unnecessary, as it did not provide any new or different damages than those received for the bad faith claim. Additionally, the district court's findings on rescission, with which we agree, effectively restores the operation of the contract. Therefore, because we cannot "grant any effectual relief" to Hayes on the breach of contract claim, we dismiss the cross-appeal from the district court's dismissal of the contract as moot. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (quotation omitted).

-10-

brought to less than the regular period of time prescribed by [Nebraska's] statutes of limitations, unless otherwise prescribed by this chapter." Neb. Rev. Stat. § 44-357. A provision in Hayes's policy prescribes a one-year limitations period. Met argues that this shorter period is "otherwise prescribed" by Neb. Rev. Stat. § 44-501, which requires fire insurance policies to "conform as nearly as practicable to . . . context, provisions, agreements, and conditions with the 1943 Standard Fire Insurance Policy of the State of New York," because the New York policy contains a one-year limitations period.

The Nebraska Supreme Court, however, has held that where a fire insurance policy contains both a one-year statute-of-limitations provision *and* "provisions amending any terms of the policy which are in conflict with state statutes to confirm with such statutes," the limitations period prescribed by the policy must yield to the five-year period prescribed by Nebraska law for contract actions. *Hiram Scott College v. Ins. Co. of N. Am.*, 188 N.W.2d 688, 690 (Neb. 1971); *see also Wulf v. Farm Bureau Ins. Co. of Neb.*, 205 N.W.2d 640, 641-42 (Neb. 1973). Hayes's policy included a provision stating that "[t]he terms of this Policy which are in conflict with the statutes of the state in which the insured premises is located are hereby amended to conform to such statutes." Under the reasoning of *Hiram Scott College*, therefore, the policy's one-year limitations period is invalid. The applicable limitations period under Nebraska law was five years, and Hayes's breach-of-contract claim was timely.

With a timely contract claim before it, the district court could properly address whether Met validly rescinded the policy. I agree with the court that we should uphold the district court's conclusion that Met either wrongly rescinded the contract or was estopped from doing so, and that Hayes was therefore a policyholder who could bring a bad faith claim. Like the court, I would affirm the district court's finding of liability on the bad faith claim and the award of damages and attorney's fees. Because Hayes does not seek additional relief on his breach-of-contract claim, a remand for further proceedings is unnecessary, and I concur in affirming the

-11-

judgment of the district court. Under this analysis, it is unnecessary to address whether a putative policyholder may bring a bad faith claim when the insurance company purports to rescind the insurance contract *ab initio* and the policyholder fails to bring a timely claim for breach of contract.

_____